**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Hasna Sayed DAHDAH,
Defendant–Appellant.**

**No. 88–1518.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 2, 1988.

Decided Dec. 13, 1988.

Brian M. Collins, Chicago, Ill., for defendant-appellant.

Barbara F. Lazarus, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, WOOD and KANNE, Circuit Judges.

BAUER, Chief Judge.

On October 18, 1987, Hasna Sayed Dahdah flew from Lebanon through Amsterdam to Chicago's O'Hare Airport, where she attempted to pass through customs. There, United States Customs Agent Michael Johnson noticed that Dahdah's passport indicated that she had entered the United States on three prior occasions in 1987. He also found her customs declaration card incomplete and motioned her aside to help her complete it. Dahdah became sweaty and feigned illness. Because of her behavior, Johnson placed a notation on Dahdah's declaration form identifying her as a "high-risk" entrant.

The customs declaration card informs the United States Customs of the passenger's name, birthdate, citizenship, any merchandise or agricultural products being carried, and any amount of currency over $10,000 being brought into the United States. Johnson helped Dahdah fill out most of the card, taking the information from her passport and a completed "I94" form she was carrying. The Immigration Form I94 must be filled out by all non-U.S. citizens, usually while on the airplane or immediately upon entering the United States. Interpreters are made available to all non-English speaking passengers both on and off the plane. Once the form is completed, its top portion is stamped with the passenger's entry date and sent to the national immigration computer system in Kentucky. The bottom portion is placed inside the passenger's passport until departure from the U.S., at which time it is retrieved, stamped, and also sent to the computer center. The computer system thus generates travel histories of non-U.S. citizens.

At a secondary customs inspection point, Dahdah met Customs Inspector Helen Brown, who requested Dahdah's passport and declaration card. Because the card still contained two unanswered questions and lacked a signature, Brown asked Dahdah to complete it. A man in line behind Dahdah translated Brown's request into another language, after which he informed Brown that Dahdah could not write. Dahdah then placed an "X" in the answer boxes for the two unanswered questions and also signed the card with an "X."

After noticing that Dahdah's passport indicated that this was her fourth trip to the United States in 1987 and that her airline ticket had been paid for in cash, Brown searched the two bags Dahdah was carrying. In one bag, Brown found a sweater, medical X-rays, and documents. When Brown asked about the X-rays, Dahdah patted her chest and said "doctor." After brushing off an attempt by Dahdah to thwart her search, Brown found ten large wooden hangers in the other bag, each wrapped in a towel or other article of clothing. After running these unusual hangers—their hooks, for instance, were too small to hang on a normal rack—through an X-ray machine, Brown took them to a tool room. There she drilled open one of the hangers and found heroin. In all, the hangers contained more than three pounds of the stuff, enough, according to an expert at trial, to supply thirty heroin addicts for a lifetime.

The grand jury charged Dahdah with possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), and with knowingly and intentionally importing heroin into the United States in violation of 21 U.S.C. § 960.

Before trial, Dahdah filed a motion in limine seeking to preclude the government from introducing any evidence of her three trips to the United States before October 18, 1987. Dahdah argued that the evidence was irrelevant, unduly prejudicial, and improper because the government intended to argue to the jury that these trips encap-

suled additional drug transactions. The government replied that, since its investigation revealed that Dahdah had lied repeatedly regarding her birthdate, intended length of stay, purpose of trip, and address while in the United States on her customs and immigration forms for the 1987 trips, evidence of the trips was probative of her intent to commit the crimes with which she was charged. The district court denied Dahdah's motion, holding that the evidence might be relevant to Dahdah's intentions on the date of her arrest, that any possible prejudice resulting from its admission did not outweigh its probative value, and that, in any event, the prior trips were not "intrinsically" bad acts within the ambit of Federal Rule of Evidence 404(b).

Before commencement of jury selection, Dahdah moved again to exclude from evidence computer printouts and the customs declaration forms documenting her trips to the United States. According to Dahdah, they were inadmissible under the business records exception to the hearsay rule unless the government could prove that Dahdah wrote the information contained on the forms. The government countered that translators were made available to help non-English speaking persons fill out the declaration forms and that the forms are kept in the regular course of U.S. Customs business. The government also pointed out that Dahdah's passport would corroborate the information on the documents because the entries stamped on the passport corresponded to the dates the documents at issue were completed. After Dahdah argued that the passport itself was not admissible as a self-authenticating business record, the court denied her motion.

Dahdah testified in her own defense at trial. In a nutshell, she claimed to be the unwitting victim of a drug-smuggling scheme concocted by a friend in Northern Lebanon, where she lived with her five children, and his nephew in Chicago. Dahdah testified that she made her 1987 trips to the United States to pick up money for her friend in Lebanon from his nephew in Chicago in exchange for cash. She said that during the trip cut short by her arrest she was to deliver the hangers to the neph-

ew and pick up more money for her Lebanon friend, as well as visit a relative who would take her to see a doctor. With respect to the inaccuracies contained on her customs and immigration forms, Dahdah claimed that any false information resulted from her inability to read, write, or speak English. The jury, however, did not believe her. It convicted her on both counts, after which the court sentenced her to 15 years in prison followed by a term of supervised release for five years. The court also ordered her deportation upon release from prison.

■ Dahdah's claims on appeal that the district court abused its discretion in denying her pretrial motions to exclude the evidence of her prior trips to the United States in 1987, merit no discussion. After reviewing the record, we simply cannot conclude that the district court abused its discretion in admitting the evidence. Dahdah also contends on appeal that the district court erred in giving certain instructions to the jury. This claim, too, is without merit. We have examined the instructions as a whole and conclude that they fairly and adequately informed the jury of the proper law to be applied to the facts of the case. *See United States v. Machi*, 811 F.2d 991, 995 (7th Cir.1987). We write to address briefly a claim by Dahdah that has some, though not much, merit: that the district court erred in allowing the prosecutor, through a series of events, to shift the burden of proof to the defendant.

At trial, the prosecutor, Mr. Rosenthal, cross-examined Dahdah regarding members of her family as follows:

Q. And, of course, your daughter could come into court here and testify ... to prove you were telling the truth, couldn't she?

A. Of course, she could testify to the truth.

Q. Is your daughter here today?

A. You can call her to come here to testify. If she is here in this country, okay, I can call her right away to testify and tell you the truth.

Q. And Mr. Collins [defense counsel] told you that he could subpoena into court any witnesses that he wants, didn't he?

Mr. Collins: Judge, I have to object to this. This is improper questioning.

The Court: Sustained.

By Mr. Rosenthal: But your daughter is not here today, is she?

A. No, my daughter is in Lebanon, but she is coming back here.

Q. When you got into trouble, did you call your daughter and say, I need you to come here and testify?

A. If I am in danger, okay, the United States of America, okay, is responsible of me because you are responsible of me over here.

Q. Listen to my question, Ms. Dahdah. After you got into trouble, did you call your daughter and tell your daughter to come here and testify for you?

A. From three months, I don't know what is going on in Lebanon with my family and I wish my daughters.

Later, during Mr. Collins's redirect examination of Dahdah, the following occurred:

Q. Ms. Dahdah, when was the last time you talked to your children?

Mr. Rosenthal: Objection, relevance.

The Court: Sustained.

Mr. Collins: Judge, he went into this.

The Court: Sustained.

By Mr. Collins: Have you been able to call your children in the last three months?

Mr. Rosenthal: Objection.

The Court: Sustained.

■ In our view, the district court erred in sustaining the government's objection to defense counsel's questioning of Dahdah concerning her children during the redirect examination. The prosecutor's objection on the ground of relevance was disingenuous. Because the prosecutor had asked Dahdah during cross-examination whether she had requested that her daughter testify on her behalf at trial when she had the power to do so, and raised the issue of why her daughter had not done so, *he made the subject relevant on redirect examination.*

Dahdah, therefore, should have been allowed to explain on redirect whether she had been able to contact her children, and the district court erred in preventing her from doing so. We disagree, however, with Dahdah's assertion that this error, combined with certain other statements by the prosecutor during closing arguments and the district court's instructions to the jury, had the effect of shifting the burden of proof to her to prove her innocence.

■ In evaluating claims of prosecutorial misconduct, we consider the prosecutor's conduct not in isolation but in the context of the whole trial in order to determine if such conduct was so inflammatory and prejudicial it deprived the defendant of a fair trial. *United States v. Howard,* 774 F.2d 838, 848 (7th Cir.1985). None of the prosecutor's statements rose to this level. To begin with, commenting on a defendant's failure to call a witness does not have the effect of shifting the burden of proof unless it taxes the exercise of the defendant's right not to testify, a claim Dahdah does not make here. *See United States v. Sblendorio,* 830 F.2d 1382, 1391 (7th Cir. 1987). In addition, the prosecutor's comment that "the evidence in this case is overwhelming, that is why it is not surprising that the defendant took the stand yesterday and got up there and told you she did not know" was nothing more than a general comment on the implausibility of Dahdah's defense—a reasonable inference based on the evidence. And although Dahdah believes that the prosecutor during his rebuttal argument accused defense counsel of lying or misrepresenting evidence to the jury at least twelve times, we find that he was merely rebutting the picture of Dahdah's innocence painted by defense counsel during his closing argument. Finally, Dahdah complains of the following response by the prosecutor to defense counsel's assertion that Dahdah could not possibly have been a knowing drug courier since she used the same name and passport for each visit: "Well, first of all, we don't know if she entered the United States on other occasions under other names, because the only records we were able to retrieve are the

records under her name. For all we know, she was coming here every week using—." But we agree with the district court that this statement was not improper argument.

 Which brings us to Dahdah's complaint concerning the district court's "missing witness" instruction. The court instructed the jury as follows:

> It was peculiarly within the power of the defense to produce the defendant's relatives in the United States, who could have given material testimony on an issue in the case. The defense's failure to call those relatives, may give rise to an inference that their testimony would be unfavorable to it.
>
> You should bear in mind that the law does not impose on a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

In this circuit, "before a party may raise to the jury the possibility of drawing an inference from the other party's failure to call a particular witness, that party must show that the 'absent witness was peculiarly within the other parties' power to produce,' and that the testimony of the absent witness 'would elucidate issues in the case.'" *United States v. Williams*, 739 F.2d 297, 299 (7th Cir.1984) (quoting *United States v. Mahone*, 537 F.2d 922, 926–27 (7th Cir. 1976)). The missing witnesses here, of course, were the relative or the doctor Dahdah claimed she was coming to the United States to see. Dahdah never identified either one, so the government could not have produced them. The testimony of either certainly would have shed light on whether Dahdah was in the United States to see a doctor as opposed to smuggling drugs, which was the ultimate question in the case. Dahdah barely argues otherwise, and we therefore cannot find error in the district court's decision to give the instruction.

 All that is left, then, is the district court's error in refusing to allow Dahdah to answer the questions on redirect examination concerning her family members. Although the prosecutor's groundless objection and the court's failure to recognize that it was groundless disturbs us, the error is harmless. The evidence in this case was simply too strong to conclude that such an error had any impact on the jury's verdict. *See United States v. Davis*, 838 F.2d 909, 920 (7th Cir.1988).

AFFIRMED.