**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James E. KESSI, Defendant–Appellant.**

**No. 87–3148.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 13, 1988.

Decided March 1, 1989.

John W. Lundin, Seattle, Wash., for defendant-appellant.

Joanne Y. Maida, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before WRIGHT, WALLACE and HUG, Circuit Judges.

WALLACE, Circuit Judge:

Kessi appeals his conviction for participating in a securities fraud scheme. Kessi, a commodities broker, executed trades· in several commodities accounts in which the investment decisions were made by Henry March, who at the time was a fugitive from justice. March and his associate, Douglas Fisher, induced investors to enter profit-sharing agreements which were guaranteed to yield returns. March then diverted part of the investors' money for his personal use and passed the rest to Kessi for trading. For his role in this scheme, a jury convicted Kessi of aiding and abetting mail fraud (18 U.S.C. §§ 2, 1341), aiding and abetting securities fraud (15 U.S.C. §§ 77q(a), 77x; 18 U.S.C. § 2), and being an accessory after the fact (18 U.S.C. § 3). Kessi appeals his conviction, challenging the jury instructions, the sufficiency of evidence, the conduct of the prosecutor, and the admission of certain testimony by a psychiatric expert. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

I

Kessi's association with March began in July 1981, when March became a commodities client of Kessi's at the brokerage firm of Smith Barney in the Seattle, Washington area. In February 1982, between $60,000 and $80,000 in checks issued by March to Smith Barney were rejected for payment due to lack of funds. As a result, in March 1982, Kessi left Smith Barney to work at Prudential Bache (Bache), taking March's commodities accounts with him. Through a security check, Bache discovered that March had felony convictions for securities fraud and mail fraud for which he had served a seven-year prison sentence. In July 1982, Bache informed Kessi that it would not continue to conduct business with March due to his criminal history.

Kessi resigned and established his own business, Alpha Com, which traded through Rosenthal, a brokerage firm in Chicago. Kessi falsely told Rosenthal that he knew of no problems with March and that March had passed a credit check at Bache. Kessi opened several accounts for March at Rosenthal. In September 1982, when March wrote checks on these accounts to cover margin calls, all checks, approximating $150,000, failed to clear the bank. Kessi was forced to obtain a bank loan for $62,-000 to cover March's margin calls. Kessi later told his business partner that March left him with $93,000 in debt from these accounts. During this time, Kessi learned that investors' funds approximating $50,-000 had not been turned over by March for trading. Kessi also received from March account papers for investors but not money that should have accompanied the papers.

In November 1982, March was indicted for mail fraud and a warrant was issued for his arrest. March fled to the Seattle area, becoming a fugitive for the next two years. As a result of considerable publicity in the Seattle area, Kessi knew of the indictment against March and of his fugitive status.

In 1983, March contacted Kessi to request his assistance in trading commodities. Kessi agreed to establish accounts for him and to refer to him by the alias George Wells. During the next two years, Kessi had approximately 200 contacts with March by telephone and met with him personally in Issaquah, Washington, to discuss the scheme. Kessi established accounts at Rosenthal in the name of Fisher, March's business associate and son-in-law. At no time did Kessi notify Rosenthal that March was the true manager of the accounts, although he was required to give this information in writing. March gave Kessi's name to investors and encouraged them to call him if they had any questions about their investments, thereby lending credibility to the scheme. When investors called, Kessi denied any knowledge of impropriety with respect to their investments.

March and Fisher persuaded investors to execute profit-sharing agreements, where-by any profits from March's trading would be split fifty-fifty. None of the investors were aware of March's fugitive status, prior felony convictions, or questionable financial history. As with the 1982 investors, March diverted for his personal use part of the investors' money and gave the rest to Kessi for trading. Kessi was aware that investors' money had been collected but not turned over to him. Throughout this period, Kessi repeatedly denied to federal investigators and various individuals that he had had any contact with or knowledge of March.

Much of Kessi's defense at trial was aimed at establishing that he suffered from post-traumatic stress disorder (PTSD) as a result of his combat service in Vietnam. Kessi contended that PTSD prevented him from forming the requisite intent to commit the crimes for which he was charged.

## II

Kessi was charged with aiding and abetting March and Fisher in a scheme to defraud investors in the "offer and sale of securities." The court instructed the jury that the profit-sharing agreements March and Fisher executed with investors constituted "securities" for purposes of this charge. Kessi complains that this instruction was improper. He argues that the existence of securities is an element of the crime and thus a question of fact for the jury. By instructing the jury that the profit-sharing agreements were securities, he contends, the court invaded the province of the jury and thereby committed reversible error.

■ We review the district court's jury instructions for abuse of discretion. *United States v. Burgess*, 791 F.2d 676, 680 (9th Cir.1986) (*Burgess*). We examine "'whether or not the instructions taken as a whole were misleading or represented a statement inadequate to guide the jury's deliberations.'" *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1454 (9th Cir.) (*Shortt Accountancy*), cert. denied, 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986), *quoting Stoker v. United States*, 587 F.2d 438, 440 (9th Cir.1978)

(per curiam). To preserve the right to appellate review of this kind, Kessi must have objected properly in the district court. Federal Rule of Criminal Procedure 30 prohibits a party from assigning error "unless that party objects thereto before the jury retires to consider the verdict, stating *distinctly* the matter to which that party objects and the *grounds* of the objection." (Emphasis added.) The standard for a proper objection under Fed.R.Crim.P. 30 and its civil counterpart, Fed.R.Civ.P. 51, is the same. *See United States v. Espinosa,* 827 F.2d 604, 613 (9th Cir.1987) *(Espinosa), cert. denied,* — U.S. —, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988); Fed.R.Crim.P. 30 advisory committee note (procedure for making objections is same for criminal and civil actions).

Kessi failed to object distinctly to the court's instruction that the profit-sharing agreements were securities. Kessi merely objected generally to this instruction. Kessi's only specific objection was to a different part of the instruction. This does not satisfy Rule 30.

■ We have recognized a sole exception to the requirement of a formal, timely, and distinctly stated objection. A party need not properly object if doing so would be a "pointless formality." *Robert's Waikiki U–Drive v. Budget Rent–A–Car Systems,* 732 F.2d 1403, 1410 (9th Cir.1984) *(Robert's Waikiki U–Drive); Brown v. AVEMCO Investment Corp.,* 603 F.2d 1367, 1371 (9th Cir.1979) *(Brown ).* An objection may be a "pointless formality" when (1) throughout the trial the party argued the disputed matter with the court, (2) it is clear from the record that the court knew the party's grounds for disagreement with the instruction, and (3) the party offered an alternative instruction. *Martinelli v. City of Beaumont,* 820 F.2d 1491, 1493–94 (9th Cir.1987); *Brown,* 603 F.2d at 1371–73; *accord Brett v. Hotel, Motel, Restaurant, Construction Camp Employees & Bartenders Union, Local 879,* 828 F.2d 1409, 1414 n. 7 (9th Cir.1987); *Lifshitz v. Walter Drake & Sons, Inc.,* 806 F.2d 1426, 1430–31 (9th Cir.1986); *Kramas v. Security Gas & Oil Inc.,* 672 F.2d 766, 769 (9th Cir.), *cert.*

*denied,* 459 U.S. 1035, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982). The offering of an alternative instruction combined with an objection to a related part of the questioned instruction does not satisfy the "pointless formality" exception. *Robert's Waikiki U–Drive,* 732 F.2d at 1409–10.

Kessi offered an alternative instruction which would have required the jury to find whether the profit-sharing agreements constituted securities. This alone, however, is not enough. *Id.* Kessi also discussed with the court whether the profit-sharing agreements were securities. While arguing a motion for judgment of acquittal, Kessi repeatedly urged the court to rule as a matter of law that the profit-sharing agreements were commodities and thus under the exclusive jurisdiction of the Commodities Futures Trading Commission. Yet at no time during this discussion did Kessi assert that the issue of whether the agreements were securities is a question of fact for the jury. We do not believe that from this discussion "the district court was fully aware of [Kessi's present] position," *Brown,* 603 F.2d at 1371, that this matter was for the jury to decide. Finally, the court held a five hour off-the-record instruction conference at which this issue may have been discussed. But because there is no record of the conference, we have no way of knowing whether the court was fully aware that Kessi did not agree with its instruction. *Espinosa,* 827 F.2d at 613 (*"record* [must] clearly establish[ ] that the court was fully aware that the party did not agree with the court's instruction" (emphasis added)); *see also Brown,* 603 F.2d at 1373 and cases cited therein. Indeed, Kessi does not even argue that at this conference he made the court aware of his position. Thus, we do not believe that an objection would have been a pointless formality. We hold, therefore, that Kessi did not properly object to the instruction.

We review an instruction for plain error when there was not a proper objection. *United States v. Ramos,* 861 F.2d 228, 230 (9th Cir.1988). "Plain error is 'highly prejudicial error affecting substantial rights[,] and is found only in exceptional circumstances.' " *Id., quoting United States v.*

*Harris,* 738 F.2d 1068, 1072 (9th Cir.1984). It must be highly probable that the error materially affected the verdict. *Id.; United States v. Williams,* 685 F.2d 319, 321 (9th Cir.1982).

■ To determine whether an investment contract is a security, we focus on the economic realities of the underlying transaction. *E.g., Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967); *Danner v. Himmelfarb,* 858 F.2d 515, 518 (9th Cir.1988). In considering the economic realities, we rely on the Supreme Court's three-prong test: "There must be (1) an investment of money, (2) in a common enterprise and (3) an expectation of profits from the managerial efforts of others." *United California Bank v. THC Financial Corp.,* 557 F.2d 1351, 1357–58 (9th Cir.1977) (paraphrasing *SEC v. W.J. Howey Co.,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–03, 90 L.Ed. 1244 (1946)).

Applying this test to the profit-sharing agreements that March and Fisher executed with investors, we conclude that it is not highly probable that an error in the instruction, if there was one, materially affected the verdict. Clearly, the investors invested money in the scheme. Furthermore, the profit-sharing agreements were executed between March, Fisher, and multiple investors, thereby forming a common enterprise. *See Brodt v. Bache & Co., Inc.,* 595 F.2d 459, 460 (9th Cir.1978). Finally, the investors expected to recognize profits solely from March's talent, not their own efforts. The instruction was not plain error.

■ Kessi argues that he traded only commodities. Commodities, Kessi insists, are regulated exclusively by the Commodities Futures Trading Commission, and not the securities laws or the SEC; thus he cannot be guilty of violating the securities laws. Kessi's argument is meritless. Kessi was convicted of aiding and abetting March's and Fisher's violation of the securities laws. The securities that March and Fisher sold to investors were profit-sharing agreements. Kessi's conviction was based on his involvement with the profit-sharing agreements, not the commodities he traded

for March. The laws which regulate commodities are irrelevant to Kessi's conviction. Kessi's argument ignores the existence of the profit-sharing agreements.

Kessi next contends that the district judge did not instruct the jury that the government must prove that Kessi had specific intent to defraud. Contrary to Kessi's contentions, the district judge explicitly instructed the jury that to convict Kessi, "[y]ou must find that Mr. Kessi acted with the specific intent to do something the law forbids. You must find that he acted with the intent to defraud the investors." Kessi's complaint, therefore, is groundless.

■ Kessi also complains that the district judge rejected his proposed instructions that the jury must find that he acted in the "offer and sale" of a security. The district court must instruct the jury on a defendant's theory of the case only if the theory is sufficiently supported by evidence and the law. *United States v. Sommerstedt,* 752 F.2d 1494, 1496 (9th Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985). To establish an aiding and abetting violation of the securities laws, the government must prove that Kessi knowingly provided "substantial assistance" to another person's violation. *SEC v. Rogers,* 790 F.2d 1450, 1460 (9th Cir. 1986) (*Rogers*). Kessi need not have acted in the offer and sale of securities to be guilty as an aider and abettor. *United States v. Mayo,* 646 F.2d 369, 371 (9th Cir.) (per curiam) (*Mayo*), *cert. denied,* 454 U.S. 1127, 102 S.Ct. 979, 71 L.Ed.2d 115 (1981). The law, therefore, does not support Kessi's theory. The district court did not abuse its discretion in rejecting Kessi's proposed instruction.

■ Kessi similarly complains that the district judge rejected his proposed instructions discussing the duty to disclose. Kessi suggests that much of the prosecutor's evidence focused on information that Kessi failed to disclose to investors even though Kessi had no duty to disclose this information. Kessi argues that failure to instruct on this issue confused the jury.

The trial judge possesses substantial latitude in tailoring jury instructions. The instructions are considered as a whole to determine if they are confusing or inadequate. *Burgess*, 791 F.2d at 680; *Shortt Accountancy*, 785 F.2d at 1454–55. Viewed as a whole, we do not conclude that the instructions are confusing. The district judge accurately instructed the jury on the elements of each of the crimes for which Kessi was charged. The judge did not instruct the jury that Kessi had a duty to disclose certain information to investors. In the argument to the jury, the government clearly stated that Kessi did not have a duty to disclose. Rather, the government argued that Kessi's failure to disclose information to investors was circumstantial evidence of his intent to defraud. We conclude that the district judge did not abuse her discretion in rejecting Kessi's proposed instruction.

### III

Kessi argues that there was insufficient evidence to convict him as an aider and abettor to securities fraud and mail fraud, and as an accessory after the fact. He contends that there was no evidence that he (a) acted with the intent to defraud, (b) provided substantial assistance to the scheme, (c) acted before the crime was completed, or (d) acted in the "offer and sale" of a security. We review the jury's verdict to determine whether, when the evidence is viewed in the light most favorable to the government, a reasonable jury could find Kessi guilty beyond a reasonable doubt on each of the elements of the crimes. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *United States v. Moreno–Pulido*, 695 F.2d 1141, 1145 (9th Cir.1983).

### A.

■ Kessi correctly states that intent to defraud requires more than mere knowledge that others may be involved in possibly shady dealings. *United States v. Piepgrass*, 425 F.2d 194, 199–200 (9th Cir.1970). Moreover, intent to defraud cannot be based on constructive knowledge of facts

known to others with whom one is involved. *Windsor v. United States*, 384 F.2d 535, 536–37 (9th Cir.1967). Kessi contends that he may have known of the scheme, but his minimal role indicates that he did not act with the requisite intent. He further argues that his PTSD prevented him from forming the intent.

The government presented considerable evidence that Kessi possessed more than mere knowledge of March's scheme: The government showed that Kessi had knowledge of March's previous fraudulent practices; that Kessi failed to disclose March's felony record, fugitive status, and prior fraudulent practices to Rosenthal or any of the investors; that Kessi lied to federal investigators about his contacts and knowledge of March during his time as a fugitive; and that Kessi had stated that he knew that his actions might violate the law. We believe that this circumstantial evidence would permit a reasonable jury to find that Kessi acted with the intent to defraud. Moreover, the jury was free not to believe that Kessi's PTSD prevented him from forming the requisite intent.

### B.

■ To be guilty as an aider and abettor, Kessi must have provided "substantial assistance" to March and Fisher. *Rogers*, 790 F.2d at 1460. Kessi asserts that the performance of "ministerial tasks," even if they aid in the securities fraud scheme, does not constitute substantial assistance, citing *Wright v. Schock*, 571 F.Supp. 642, 663 (N.D.Cal.1983) *(Wright)*, aff'd, 742 F.2d 541 (9th Cir.1984); *Feldman v. Simkins Industries, Inc.*, 492 F.Supp. 839, 847 (N.D. Cal.1980), aff'd, 679 F.2d 1299 (9th Cir. 1982); and *Mendelsohn v. Capital Underwriters, Inc.*, 490 F.Supp. 1069, 1083–84 (N.D.Cal.1979). He asserts that performance of ministerial tasks includes the performance of routine accounting or brokerage services that are generally available to the principal securities law violator. *Wright*, 571 F.Supp. at 663. Kessi argues that his role in the scheme involved only the performance of ministerial tasks; if he had declined to establish accounts and exe-

cute trades for March, any other commodities broker would have done so.

We need not decide whether the performance of ministerial tasks constitutes substantial assistance. The government presented evidence that Kessi provided more than routine services that March would have secured elsewhere if Kessi had declined: Kessi established accounts in Fisher's name, rather than March's; Kessi agreed to refer to March by his alias, George Wells; and Kessi permitted March and Fisher to use his name to lend credibility to the scheme. These services were not generally available to March from any other broker. We conclude that a reasonable jury could have found that Kessi substantially assisted March in a scheme to defraud investors.

### C.

■ Kessi argues that there is insufficient evidence that he acted before the completion of the crime, an element of aiding and abetting. He asserts that March and Fisher contacted investors, executed the profit-sharing agreements, and collected money before his involvement in the scheme.

The government presented evidence that on April 27, 1984, Kessi, March, and Fisher met in Issaquah, Washington to discuss the scheme. At this meeting, March spoke of new corporate accounts which he hoped to establish. Kessi delivered blank new account papers to March with which to open these corporate accounts. In May and June 1984, several individuals invested in March's new corporate programs. We conclude, therefore, that there was sufficient evidence for the jury to find that Kessi acted before the completion of the crime.

### D.

Kessi complains that the government did not present evidence that Kessi acted in the offer and sale of a security. As we explained earlier, to be guilty as an aider and abettor, Kessi need not have acted in the offer and sale. Rather, Kessi merely must have provided substantial assistance to March and Fisher. *Rogers*, 790 F.2d at 1460; *Mayo*, 646 F.2d at 371. Thus, Kessi's argument is meritless.

### E.

■ Kessi asserts that there was insufficient evidence to convict him as an accessory after the fact. The statute under which Kessi was convicted provides in part: "Whoever, knowing that an offense against the United States had been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact." 18 U.S.C. § 3. Kessi argues that a violation of this statute requires a physical act of providing specific types of assistance, including food, shelter, and other aid to avoid detection. He maintains that providing indirect financial assistance to March does not violate the statute. For this proposition, Kessi relies on *United States v. Kutas*, 542 F.2d 527 (9th Cir.1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977); and *United States v. Shapiro*, 113 F.2d 891 (2d Cir.1940). But these cases interpret a different statute, 18 U.S.C. § 1071 and its predecessor, which make it a crime to harbor or conceal a fugitive. Kessi enabled March to have a continuing source of income, hid his identity from Rosenthal and federal investigators, and met with him to discuss the fraudulent scheme. We believe that this conduct is contemplated by the language of the statute.

■ Kessi next argues that any assistance that he may have provided March occurred during, and not after, March's criminal conduct. Because 18 U.S.C. § 3 punishes assistance rendered after a crime has been completed, Kessi suggests that as a matter of law he cannot be an accessory after the fact. March became a fugitive in November 1982. The crimes for which March was originally indicted all occurred and were completed in 1982. But Kessi assisted March, as described above, in 1983 and 1984, after the 1982 crimes had occurred. As a matter of law, therefore, Kessi could be guilty as an accessory after the fact for the 1982 crimes.

Kessi reiterates his contention that his PTSD prevented him from forming the requisite intent to commit the crimes, and argues that he lacked the criminal intent to be an accessory after the fact. But the government presented evidence that Kessi intended to assist March in avoiding apprehension. There was evidence that Kessi lied to federal investigators about his contacts and knowledge of March. *United States v. Prescott*, 581 F.2d 1343, 1353 (9th Cir.1978) (lying to investigators is circumstantial evidence of intent to act as an accessory after the fact). Kessi also stated that at the time he knew his conduct might violate the law. As indicated earlier, the jury was not obligated to believe Kessi's testimony concerning the effects of PTSD. We conclude that a reasonable jury could have found that Kessi intended to commit the crime.

## IV

Kessi argues that the prosecutor's conduct deprived him of a fair trial. He complains that the prosecutor (a) commented on Kessi's failure to testify, (b) prejudiced the jury by repeatedly referring to Kessi's wealth and lifestyle, and (c) improperly opined on Kessi's guilt, evidence, and the credibility of witnesses.

### A.

Kessi claims that the prosecutor made repeated references during his closing argument to Kessi's failure to testify, thereby violating his fifth amendment privilege. The prosecutor once stated that "Mr. Kessi's lawyer speaks for him, and speaks with his permission." Similarly, he commented that Kessi argued "through his counsel." The prosecutor also commented that a tactic of Kessi's was "to put another person on trial and to keep James Kessi as much in the background as possible." Finally, the prosecutor argued that Kessi's PTSD was a fabricated defense. Kessi claims that this argument was an implicit reference to his failure to testify because the only way to demonstrate how the disability affected him would have been to testify.

The fifth amendment prohibits the prosecutor from commenting on Kessi's decision not to testify. *United States v. Bagley*, 772 F.2d 482, 494–95 (9th Cir.1985), *cert. denied*, 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986); *United States v. Soulard*, 730 F.2d 1292, 1306–07 (9th Cir.1984) (*Soulard*). A reference to a defendant's assertion of his fifth amendment right is improper if "the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." *Soulard*, 730 F.2d at 1306. Comments that call attention to inadequacies in the accused's defense do not violate the fifth amendment. *Id.* at 1306–07.

The prosecutor did not comment directly on Kessi's failure to testify; he stated that Kessi's "lawyer speaks for him," and that he speaks "through his counsel." In *United States v. Hozian*, 622 F.2d 439, 441 (9th Cir.1980), we observed that the comment that a defendant speaks "through his attorney" was not improper. The comment in *Hozian* is in substance identical to the prosecutor's comments in this case.

Likewise, the prosecutor's references to Kessi's PTSD defense, and his tactical decision to focus on March and Fisher and stay "in the background" were intended to rebut Kessi's case. It is permissible for the prosecutor to call attention to Kessi's failure to present exculpatory evidence so long as he does not comment on the decision not to testify. *Soulard*, 730 F.2d at 1307; *United States v. Passaro*, 624 F.2d 938, 944 (9th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 842 (1981). The prosecutor cannot be prevented from criticizing Kessi's central defense—his evidence of PTSD—merely because Kessi's testimony may have strengthened this evidence. The prosecutor's comments, therefore, were permissible.

### B.

Kessi complains that the prosecutor prejudiced the jury by making irrelevant references to his wealth and lifestyle.

The prosecutor introduced evidence of the value of Kessi's home and yacht and of his financial success. We review the district court's decisions balancing the probative value of evidence against its prejudicial effect for abuse of discretion. *United States v. Rubio*, 727 F.2d 786, 798 (9th Cir.1983). Likewise, we review decisions regarding the relevance of evidence for abuse of discretion. *United States v. Burreson*, 643 F.2d 1344, 1349 (9th Cir.), *cert. denied*, 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135 (1981). Infrequent references to wealth are not prejudicial. *See United States v. Little*, 753 F.2d 1420, 1441 (9th Cir.1984).

The government introduced this evidence in response to Kessi's PTSD defense. Kessi attempted to prove that his PTSD made him irrationally unable to refuse March's requests for assistance. To rebut this claim, the prosecutor introduced evidence of wealth and lifestyle to attempt to show that Kessi rationally joined March's scheme out of financial motivation. Kessi had received substantial commissions from March's early trading during 1981 and 1982, and he hoped to recover March's debt. As additional proof that he actually suffered from PTSD, Kessi introduced evidence that he was unable to enjoy leisure time or function in social relationships. The prosecutor's rebuttal evidence of Kessi's lifestyle demonstrated that he willingly participated in social and leisure activities.

Kessi relies on *United States v. Stahl*, 616 F.2d 30, 31–33 (2d Cir.1980), to argue that the prosecutor's references to wealth were prejudicial. In *Stahl*, the government's primary strategy included a persistent appeal to class prejudice by introducing clearly irrelevant evidence of wealth. The government's evidence of wealth did not rebut a defendant's defense and was not intended for that purpose. The record does not demonstrate that the prosecution pursued a similar strategy with respect to Kessi. The evidence of wealth was relevant and discrete. We hold that the district judge did not abuse her discretion in admitting this evidence.

## C.

Kessi complains that the prosecutor improperly commented on his guilt by suggesting the PTSD defense was "invented by Mr. Kessi and his lawyer," thereby insinuating that Kessi was lying. Kessi also argues that the prosecutor improperly vouched for the credibility of Fisher by informing the jury that Fisher pled guilty for his participation in the scheme for which Kessi was charged. The prosecutor commented that Fisher "has nothing to hide, and he has no reason to distort the truth with you."

Because Kessi did not object to these comments at trial, we review for plain error. *United States v. Young*, 470 U.S. 1, 13–14, 105 S.Ct. 1038, 1045–46, 84 L.Ed. 2d 1 (1985) (*Young*). We will correct only errors that are "particularly egregious." *Id.* at 15, 105 S.Ct. at 1046, *quoting United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). We limit our review to errors that " 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' " *Young*, 470 U.S. at 15, 105 S.Ct. at 1046, *quoting United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). We will seldom find plain error when evidence against the defendant is so strong that the absence of the prosecutor's misconduct would not have changed the verdict. *United States v. Giese*, 597 F.2d 1170, 1199 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979). We do not believe that these statements changed the verdict. As we have already discussed, there was strong evidence to convict Kessi. The prosecutor's comments may not have been error—they certainly do not rise to the level of plain error.

## V

The government's psychiatric expert, Dr. Risse, testified that Kessi possessed the mental ability to commit the crimes charged. He also testified that during a court-ordered psychiatric examination, Kessi acknowledged that he knew assisting March might violate the law. Kessi argues that Dr. Risse's testimony was inadmissible

under Fed.R.Evid. 704(b) and Fed.R. Crim.P. 12.2(c).

Fed.R.Evid. 704(b) prohibits an expert witness from expressing an opinion as to whether the defendant had the requisite intent to commit the crime. Fed.R.Crim.P. 12.2(c) prohibits an expert from testifying with respect to statements made by a defendant during a court-ordered psychiatric examination, "except on an issue respecting the mental condition on which the defendant has introduced testimony."

The district court admitted Dr. Risse's testimony on the ground that Kessi's expert, Dr. Wilson, testified concerning his ability to form the requisite intent to commit the crimes. For example, when questioned about Kessi's mental state, Dr. Wilson stated: "I believe that he couldn't say no to Harry March." Similarly, Dr. Wilson testified that Kessi did not fully understand his actions as a result of PTSD.

If one party introduces inadmissible testimony, then, at the discretion of the court, the opposing party may also introduce testimony on this same issue to rebut any false impression that may have resulted from the original testimony. *United States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir.1988). We agree with the district court that Kessi initially offered testimony on the ultimate issue of his ability to form the requisite intent. Kessi opened the door for Dr. Risse's testimony to rebut that of Dr. Wilson, and thus no violation of Fed.R.Evid. 704(b) occurred. Likewise, Dr. Risse's testimony did not violate Rule 12.2(c) because Kessi initially introduced testimony on the issue. We hold, therefore, that the district judge did not abuse her discretion in admitting this testimony.

AFFIRMED.