944 F.2d 910
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Elmer Ray PENN, Defendant-Appellant.
 No. 90-30436.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 9, 1991.*
Decided Sept. 20, 1991.
 
 Before WRIGHT, FARRIS and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Elmer Ray Penn appeals his conviction for conspiracy,
 
 
 3
 distribution of heroin, and other related crimes.
 
 
 4
 We affirm.
 
 
 5
 * Penn challenges the sufficiency of the evidence supporting his conspiracy conviction. "The essential elements of a conspiracy are: '(1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime.' " United States v. Medina, Nos. 89-10651, 89-10653, 90-10002, slip op. 9825, 9832 (9th Cir. July 31, 1991) (citation omitted).
 
 
 6
 At trial, the jury heard evidence that Elmore Penn (Elmer Ray Penn's father), Doris Sterling, and Janice Wallace were involved in a conspiracy to distribute heroin. Sterling first bought heroin from Wallace in Los Angeles. Later, Sterling made several trips to the Seattle home owned by Wallace and occupied by the Penns, where she purchased more heroin.
 
 
 7
 The jury heard evidence from Doris Sterling that Elmer Ray Penn knew of the conspiracy, was a part of it, and joined in its goals. Doris Sterling testified to the following: (1) on her third trip to Seattle, she told Penn that "nothing much" was happening in Alaska; he replied that they were "thinking about cutting off that end of the business." (2) On her fifth trip to Seattle, there was a mix-up, and Sterling had to fly to Los Angeles to see Wallace, and then back to Seattle to get the heroin. She told both Elmer Ray Penn and his father, Elmore Penn, that they needed to "get on the ball" or she would have to call "headquarters." Elmer Ray Penn replied, "[t]his is headquarters." (3) On her final trip to Seattle, Sterling was greeted at the door to the house by Elmer Ray Penn, who took her upstairs to see Wallace. Sterling then handed $14,000 to Penn, which Wallace grabbed from him.
 
 
 8
 Further, Neal Huntley testified to the following: (1) he twice sold Penn an ounce of heroin, once for $9500 and once for $10,500. (2) Penn told him he " 'kept busy' in the heroin trade." Thus, " 'the evidence and all reasonable inferences which could be drawn from it, when viewed in the light most favorable to the government,' " United States v. Davis, 932 F.2d 752, 761 (9th Cir.1991) (citations omitted), sustain a verdict of guilty on every element of the crime of conspiracy.
 
 II
 
 9
 A criminal defendant's tax history is admissible if he spent large amounts of cash that he did not declare as gross income on his tax returns. See United States v. Ordonez, 737 F.2d 793, 811 (9th Cir.1984). The evidentiary theory is that a person who underreports (or fails to report) a large cash income may be obtaining his money illegally. Id. Penn attempts to distinguish his case from Ordonez because he merely possessed a large amount of cash, without spending it. The theory of cases such as Ordonez applies whether the alleged drug proceeds were spent or saved. The district court's decision to admit Penn's tax history was not an abuse of discretion. See United States v. Ayers, 924 F.2d 1468, 1474 (9th Cir.1991) (citations omitted).
 
 III
 
 10
 Penn contends that the district judge breached Fed.R.Crim.P. 32(c)(3)(D) by failing to attach to the presentence report his decision to ignore certain disputed convictions in Penn's record. Penn relies on United States v. Petito, 767 F.2d 607, 610 (9th Cir.1985), for the proposition that failure to comply with any portion of Rule 32(c)(3)(D) will result in remand.
 
 
 11
 Penn's contentions lack merit. On April 18, 1991, the district court sent to the Bureau of Prisons the transcript of the sentencing hearing. Under United States v. Fernandez-Angulo, 897 F.2d 1514, 1517 & nn. 4, 5 (9th Cir.1990) ("we overrule ... Petito "), that action satisfies Rule 32(c)(3)(D).
 
 IV
 
 12
 Penn claims that the district court committed reversible error when it gave Jury Instruction No. 10, and denied his Proposed Instructions Nos. 4 and 15.
 
 
 13
 Penn objects to Instruction No. 10 because it warns the jury to consider the testimony of two witnesses with "great caution, giving it the weight you feel it deserves," rather than with "greater caution than that of ordinary witnesses." Penn did not make this objection at trial; accordingly, the panel reviews for plain error. Fed.R.Crim.P. 30; United States v. Kessi, 868 F.2d 1097, 1102 (9th Cir.1989).
 
 
 14
 " '[N]either party, including a criminal defendant, may insist upon any particular [instructional] language.' " United States v. Chen, No. 90-10434, slip op. 8377, 8384 (9th Cir. July 5, 1991) (citations omitted). There is no meaningful difference between the language of Instruction No. 10 and Penn's proposed language. See United States v. Bernard, 625 F.2d 854, 857 & n. 1, 858 & n. 4.
 
 
 15
 Penn also objects to Instruction No. 10 because it "combin[es] the instruction regarding witnesses who have received immunity, [and] testimony of accomplices and witnesses who have pled guilty ... into one instruction." This objection was distinctly raised before the jury retired, and therefore does satisfy the requirements of Fed.R.Crim.P. 30. See Kessi, 868 F.2d at 1102.
 
 
 16
 We review denials of objections to the formulation of jury instructions for abuse of discretion. Chen, slip op. at 8384; United States v. Sherlock, 865 F.2d 1069, 1083-84 (9th Cir.1989). Reviewed for abuse of discretion, the district court's decision not to separate the warnings of Instruction No. 10 was not error.
 
 
 17
 Before the jury retired, Penn submitted Proposed Instructions Nos. 4 and 15, which would have warned the jury to consider the testimony of witness Neal Huntley with caution because he had been convicted of a crime and had lied under oath on a prior occasion. The district court denied both of these proposed instructions.
 
 
 18
 Even reviewed de novo, the denial of Penn's proposed instructions was not error. The jury received instructions to view Huntley's testimony with caution because he was an accomplice, and was testifying pursuant to a grant of immunity. The trial court also generally instructed the jury to consider a witness' credibility in light of all the evidence in the case, and specifically warned the jury about prior contradictory statements. Penn was not entitled to Proposed Instructions Nos. 4 and 15 because other instructions "adequately covered [his] defense theory" that Huntley was lying. Chen, slip op. at 8384; see United States v. Tamura, 694 F.2d 591, 602 (9th Cir.1982); United States v. Allen, 579 F.2d 531, 533 (9th Cir.1978), cert. denied sub nom. Mitchell v. United States, 439 U.S. 933 (1978).
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3