UNITED STATES of America,
Plaintiff–Appellee,

v.

Leonard Lee WILLIAMS,
Defendant–Appellant.

No. 91–50284.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1992.

Submission Deferred Feb. 5, 1992.

Resubmitted June 11, 1992.

Decided April 8, 1993.

Guy C. Iversen, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Barbara A. Curry, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: BRUNETTI, O'SCANNLAIN, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Defendant Leonard Lee Williams appeals his conviction for possession with intent to distribute PCP, in violation of 21 U.S.C. § 841(a). He claims that he is entitled to a new trial based on (1) improper comments made by the prosecutor during rebuttal regarding the defense's failure to call a

witness; (2) erroneous jury instructions that possession of a substantial quantity of narcotics may establish knowing possession; and (3) lack of a unanimous jury verdict because a juror did not know she could change her vote when polled.

We have jurisdiction pursuant to 28 U.S.C. § 1292 and affirm Williams' conviction.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

While monitoring the Greyhound Bus Station, Los Angeles Police Detectives Daniel Mulrenin and Herbert Maples and DEA Special Agent Jim Jeffery observed Defendant Williams behaving in a suspicious manner: he appeared to be nervous, was making heavy eye contact with the passengers, and was looking around to see whether anyone was watching him. They saw Williams sit down on a bench, tightly clench the suitcase he was carrying between his legs, place his duffel bag a few feet away, and look around nervously.

Detective Mulrenin identified himself to Williams, and examined Williams' identification and one-way cash paid ticket to New York. Detective Mulrenin observed that Williams' hands were shaking uncontrollably, he was sweating profusely, and his breathing was heavy. Detective Mulrenin asked Williams for permission to search the luggage, and Williams responded, "Sure, go ahead," but said the grey suitcase wasn't his. Detective Maples approached to assist in the search and, noticing the suitcase was locked, asked Williams if he had a key. Williams said he did not, whereupon Williams reached over and broke the lock. The suitcase contained 13.3 pounds of a mixture containing PCP. On his way to the police station, Williams spontaneously stated that he was "doing this" to make some money for Christmas. At trial, Williams denied having made any post-arrest statements and contended that he saw the suitcase for the first time in the bus station when an unknown man asked him to watch it while the man went to get a drink of water. Williams admitted, however, that he never told this story to the police during the search or during the trip to the station. Williams was convicted by the jury of possession with intent to distribute PCP.

## DISCUSSION

### I. *PROSECUTORIAL MISCONDUCT*

Williams argues that the Government's comments during rebuttal about the subpoena power of the defense improperly shifted the burden of proof to the Defendant.

#### A. *Facts*

Detective Maples, one of the police officers involved in the arrest, was not called by the Government to testify. In closing argument, defense counsel commented on two separate occasions that the prosecution failed to produce Detective Maples because his testimony would have been detrimental to the Government's case. Defense counsel stated: "But you can ask yourself, where was Detective Maples? Maybe he wouldn't toe the company line," and, "So what is it about Detective Maples that they don't want you to hear? You can ask yourself that."

During rebuttal, the prosecutor responded:

Another tactic they use is talking about, well gosh, where is this other person, Detective Maples, who isn't here to testify? Well, first of all, Ladies and Gentlemen, there may have been a lot of witnesses to what went on, but the Government does not have to bring before you every single witness in the Greyhound Bus Station who saw this happen.

It has no burden to do other than what it did, which is to prove beyond a reasonable doubt that these things happened. And it did that by giving you these two witnesses who say everything clearly, who heard everything clearly.

And I might add, the defense has, through this court, the subpoena power. They could have subpoenaed Detective Maples here; they could have had him tell you their story. Ask yourself, Ladies and Gentlemen, when they are ask-

ing you where Detective Maples is, ask them why they .didn't bring Detective Maples in here.

Williams argues that the prosecutor's comment concerning the defense's failure to call Detective Maples improperly shifted the burden of proof from the Government to him.

### B. *Standard of Review*

██▌ A plain error standard of review is applied where defendant failed to interpose an objection to the challenged prosecutorial comment. *United States v. Endicott*, 803 F.2d 506, 513 (9th Cir.1986), *cert. denied*, 498 U.S. 989, 111 S.Ct. 529, 112 L.Ed.2d 540 (1990). Because defense counsel moved for mistrial on the basis of a different prosecutorial comment than the one he presently appeals, we review for plain error. ·

### C. *Analysis*

This court has considered prosecutorial misconduct in the context of a Fifth Amendment claim that a prosecutor's comments violated a defendant's right against self-incrimination. *See, e.g., United States v. Castillo*, 866 F.2d 1071, 1083 (9th Cir. 1989); *People of the Territory of Guam v. Ojeda*, 758 F.2d 403, 406–07 (9th Cir.1985); *United States v. Hill*, 953 F.2d 452, 460 (9th Cir.1991). We now consider, for the first time, the applicable test where the defense claims prosecutorial comments shifted the burden of proof to the defendant.

In *United States v. Sblendorio*, the Seventh Circuit observed that a prosecutor's comments concerning a defendant's failure to call a witness may mean one of three things:

(1) the case stands unrebutted, which influences the weight jurors should give to the evidence; (2) each side can call witnesses, implying that neither side's failure to call a witness supports an adverse inference; (3) the defendant's failure to call the witness supports an inference that the witness would not have supported the defendant's version of events.

830 F.2d 1382, 1391 (7th Cir.1987), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988). Noting that "[a]n inference is a way to carry the burden, and no more changes it than does damning evidence," the *Sblendorio* court found "none of these meanings actually changes the burden ... unless the prosecutor's comment uses the defendant's [Fifth Amendment] privilege as evidence against him...." *Id.; see also United States v. Dahdah*, 864 F.2d 55, 59 (7th Cir.1988), ("commenting on a defendant's failure to call a witness does not have the effect of shifting the burden of proof unless it taxes the exercise of the defendant's right not to testify"), *cert. denied*, 489 U.S. 1087, 109 S.Ct. 1550, 103 L.Ed.2d 853 (1989).

██▌ .In the present case, Williams' Fifth Amendment right not to testify was not implicated because he did in fact testify at trial. Therefore, we hold the prosecutor's comment did not shift the burden of proof.

"Additionally, where the defendant opens the door to an argument, it is 'fair advocacy' for the prosecution to enter." *United States v. Falsia*, 724 F.2d 1339, 1342 (9th Cir.1983). "A prosecutor may properly reply to the arguments made by defense counsel, so long as the comment is not manifestly intended to call attention to the defendant's failure to testify." *United States v. Bagley*, 772 F.2d 482, 494 (9th Cir.1985), *cert. denied*, 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986).

Defense counsel argued in closing that the Government's decision not to call Detective Maples as a witness was evidence of weakness in the Government's case. Because the defense counsel "opened the door" to the issue of the uncalled witness, the prosecutor's reply was permissible.

### II. *JURY INSTRUCTIONS*

Williams argues the court erred in instructing the jury that possession of a substantial quantity of narcotics may be sufficient to support a finding that the defendant knowingly possessed the narcotics.[1]

---

1. The district court instructed the jury as follows:

   In determining whether the defendant knowingly possessed a controlled substance, you

He contends, first, that by permitting the jury to make a finding based on certain facts, the instruction impermissibly shifted the burden of proof to him. He also contends that evidence of a substantial quantity of narcotics is not relevant to his knowledge of its presence in the suitcase inasmuch as there was no evidence he packed the suitcase and no evidence the suitcase was heavier or bulkier than normal suitcases, which might have alerted him to the presence of something unusual.

## A. Burden of Proof

■ Our analysis of the challenged instruction is controlled by *United States v. Rubio–Villareal*, 967 F.2d 294 (9th Cir. 1992) (en banc), which held that an instruction is defective if it permits a jury to draw a permissive inference from isolated facts. *Id.* at 299–300. The jury instruction in *Rubio–Villareal* allowed the jury to infer that the defendant "knowingly" possessed drugs because he drove the car and the drugs were concealed in the body of the car. *Id.* at 295. Similarly, the instruction here allowed the jury to make a finding of knowing possession because a large quantity of drugs was in the suitcase.[2] Furthermore, the same concerns are implicated in both cases: inappropriate intrusion into the jury's deliberations and permitting the jury to convict without considering all the evidence presented at trial. *See id.* at 300.

In *United States v. Chu*, 988 F.2d 981 (9th Cir.1993), this court applied the reasoning articulated in *Rubio–Villareal* to an analysis of a jury instruction virtually identical to the present instruction.[3] Finding the instruction erroneous, the *Chu* court reasoned that it "improperly intruded on

the jury's deliberative process." *Id.* at 984 (citing *Rubio–Villareal*, 967 F.2d at 299).

Therefore, under *Rubio–Villareal* and *Chu*, we hold that the district court erred in giving the challenged instruction.

## B. Plain Error Doctrine

■ This, however, does not end our inquiry. In general, an error in the jury instructions will not justify reversal if that error is harmless. *Rubio–Villareal*, 967 F.2d at 300; *Chu*, at 984–85. However, if a party does not properly object in accordance with Fed.R.Crim.P. 30, the plain error doctrine applies. *United States v. Kessi*, 868 F.2d 1097, 1102 (9th Cir.1989). To have preserved his right to appellate review under Rule 30, Williams must have objected before the jury retired, stating *distinctly* the matter to which he objected and the *grounds* of the objection. *Id.* (quoting Fed.R.Crim.P. 30). Offering an alternative instruction alone is not enough; the district court must be fully aware of the objecting party's position. *Id.*

■ In the present case, defense counsel stated to the district court:

It is the position of the Defense that this instruction should not be given at all, but if it is going to be given, that rather than "may be sufficient," it should read, "May be but doesn't have to be."

Because defense counsel did not distinctly state the grounds of his objection and merely offered an alternative instruction, plain error review is appropriate.

"Plain error is highly prejudicial error affecting substantial rights, and is found only in exceptional circumstances." *Id.* (in-

---

may consider the quantity of narcotics involved. Possession of a substantial quantity may be sufficient to support a finding that a defendant knowingly possessed the narcotics.

**2.** In fact, the instruction here was even more prejudicial than the one in *Rubio–Villareal*, because it permitted the jury to make a finding and not just draw an inference. An inference is weaker than a finding; an inference needs additional evidence before it becomes a finding. Thus, if a judge may not instruct a jury that they may *infer* knowledge from certain facts (*Rubio–Villareal*, 967 F.2d at 300), he may certainly not

instruct a jury that they may *find* knowledge from the same facts.

**3.** In *Chu*, the district court instructed the jury as follows:

In addition to any other evidence in determining whether defendant knowingly possessed a controlled substance, you may consider the quantity of the controlled substance involved. Possession of a substantial quantity of a controlled substance alone may be sufficient to support a finding that a defendant knowingly possessed that controlled substance. *Chu*, at 983.

ternal quotation omitted). Under the plain error doctrine, "[i]t must be highly probable that the error materially affected the verdict." *Id.* at 1103. "Reversal of a criminal conviction on the basis of plain error is an exceptional remedy, which we invoke only when it appears necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." *United States v. Bordallo*, 857 F.2d 519, 527 (9th Cir.1988) (quotation omitted), *modified on other grounds*, 872 F.2d 334 (9th Cir.), *cert. denied*, 493 U.S. 818, 110 S.Ct. 71, 107 L.Ed.2d 38 (1989). "Rarely will an improper jury instruction justify a finding of plain error." *Id.* "In applying the plain error standard we consider all circumstances at trial including the strength of the evidence against the defendant." *United States v. Chambers*, 918 F.2d 1455, 1459 (9th Cir.1990) (quotations omitted).

■ Here, there was considerable circumstantial evidence of Williams' guilt: he carried the suitcase through the terminal; he appeared extremely nervous; he clutched the suitcase between his legs, while his other bag was a few feet away; during questioning his hands were shaking uncontrollably, and he began to sweat profusely and breathe heavily; the substance he carried was highly volatile; and he confessed that he was "doing this" for Christmas money. In light of the "strength of the evidence against the defendant," *Chambers*, 918 F.2d at 1459, we cannot say that it is "highly probable" that the erroneous instruction "materially affected the verdict," *Kessi*, 868 F.2d at 1103, and so conclude that reversal is not "necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process," *Bordallo*, 872 F.2d at 527. Accordingly, we hold that the instruction did not constitute plain error.

### C. *Relevance*

Williams' relevance argument is basically one that the inference is not logically supportable. However, because the instruction was not objected to, the analysis undertaken above compels us to find that the instruction did not constitute plain error.

## III. *UNANIMOUS VERDICT*

### A. *Facts*

After the jury's verdict of conviction was read, the trial court polled each juror and each assented to the guilty verdict. Following trial, one of the jurors, Diane Hood, approached defense counsel in the hallway and asked him how long defendant was going to spend in prison for this crime. Defense counsel told Ms. Hood that he could not ethically disclose that information, but that it was a serious sentence.

The next day, Ms. Hood phoned the district court wishing to discuss the verdict. Thereafter, Ms. Hood sent a letter to the district court, and to counsel for both the Government and the defense stating that she did not believe Williams was guilty, that she succumbed to pressures from other jurors, and that she believed she had to repeat her guilty verdict at polling because that was the verdict already reached in the jury room.

Williams argues that he had been deprived of his right to a unanimous verdict as provided by Fed.R.Crim.P. 31(d).

### B. *Fed.R.Crim.P. 31(d)*

Fed.R.Crim.P. 31(d) provides: "When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged."

Williams argues that because Ms. Hood did not know she could change her mind during polling, the court could not ascertain whether a unanimous, uncoerced verdict had been reached. He concludes that, as a result, the underlying purpose of Fed. R.Crim.P. 31(d) was defeated.

■ Rule 31(d) requires only that jurors be placed in a situation (i.e., polling in open court) that allows them to be free of jury-room coercion. The legal consequence of Williams' argument would expand the rule to require a trial court to notify the jury during polling that they can change their

minds. We reject Williams' argument because neither case law nor the plain language of Rule 31(d) support a rule requiring the jury to be so instructed when polled.

Furthermore, once a verdict has been returned, generally it is no longer impeachable for lack of unanimity. *United States v. Schroeder,* 433 F.2d 846, 851 (8th Cir.1970), *cert. denied,* 401 U.S. 943, 91 S.Ct. 951, 28 L.Ed.2d 224 (1971). "After a jury has given its verdict, has been polled in open court and has been discharged, an individual juror's change of mind or claim that he was mistaken or unwilling in his assent to the verdict comes too late." *Id.; see also Medina v. United States,* 254 F.2d 228, 231 (9th Cir.) ("It is well settled that matters affecting the personal feelings or views of a juror ... should not be received to set aside or overthrow the verdict"), *cert. denied,* 358 U.S. 846, 79 S.Ct. 72, 3 L.Ed.2d 80 (1958). In sum, we agree with the district court that Ms. Hood was provided the opportunity to change her vote outside the influence of the other jurors and that her change of mind came too late.

AFFIRMED.