**UNITED STATES of America,
Plaintiff,**

v.

**Patricia HILL, Defendant.**

**No. CR 99–60010–01–HO.**

United States District Court,
D. Oregon.

May 12, 1999.

Gregory E. Veralrud, Veralrud, Clark & DuVall, Eugene, OR, for Patricia King Hill, defendant.

Christopher Cardani, U.S. Atty's Office, Eugene, OR, for U.S.

### ORDER

COFFIN, United States Magistrate Judge.

Before the court is the government's motion (# 26) to modify the conditions of release.

Defendant Patricia Hill (hereinafter Patricia) is charged with harboring a fugitive and with being an accessory after the fact by assisting a fugitive in order to hinder and prevent his apprehension.

The fugitive in question is Charles Hill (hereinafter Charles), Patricia's husband. The pertinent background facts are as follows:

Charles was being investigated by the U.S. Dept. of Health and Human Services (DHHS) for alleged violations of the Child Support Recovery Act, 18 U.S.C. § 228. Prior to seeking an indictment against Charles, an agent from DHHS informed him of the investigation and that he would in all likelihood be charged with failure to pay court-ordered child support to a child from a previous marriage. At some point thereafter, but prior to charges being filed against him, Charles relocated to Mexico. On 10/15/98, a misdemeanor failure to pay child support was filed against Charles. On 12/17/98, a grand jury increased the charge to a felony failure to pay child support. An arrest warrant was issued for Charles and is currently outstanding.

Patricia was initially charged on 2/17/99 with the misdemeanor offense of being an accessory after the fact. The grand jury subsequently added the felony charge of harboring a fugitive on 3/18/99.

The Hills relocated to Mexico some months prior to the filing of the first charge against Charles. They are constructing a ranch in Mexico, and the location of the ranch and Charles is now known to the government. The problem the government has in apprehending Charles is that the offenses with which he is charged are not extraditable under the extradition treaty between the United States and Mexico.

After Patricia was arrested on her charges, the government requested that the court order her to remain in the United States pending trial on the theory that her sojourns to the ranch in Mexico (which she shares with her husband) is a form of support for a fugitive. The court declined to impose this condition, primarily because this defendant is not a flight risk and, notwithstanding the government's frustration at Charles' resort to a place of sanctuary, there would appear to be serious constitutional issues implicated by the imposition of conditions of release designed to interfere with the spousal relationship in order to induce Charles to voluntarily surrender. *See e.g. Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977).

The government's current motion again concerns Patricia's traveling to Mexico as well as her desire to transfer certain assets to Mexico to construct and stock the ranch. Patricia owns about a dozen show horses, which she seeks to transport from the United States to the ranch. In addition, she has accounts in the United States from which she proposes to draw funds to pay the workers constructing the ranch. The government objects to any such transfers on the theory that such would constitute a continuing violation of the accessory after the fact and harboring statutes.

This is an unusual case and neither party has been able to cite authority that is directly on point. Clearly, if Charles were on the run in the sense that he was "hiding" to avoid apprehension, and Patricia was assisting him in this endeavor, the government's point would be well-taken. *See U.S. v. Kessi,* 868 F.2d 1097, 1105 (9th Cir.1989); *U.S. v. Yarbrough,* 852 F.2d 1522, 1542 (9th Cir.1988); *United States v. Felix–Gutierrez,* 940 F.2d 1200, 1205–06 (9th Cir.1991) (accessory after the fact statute has extraterritorial application and government need not show that "someone assisting another in avoiding apprehension, trial or punishment knows the jurisdictional nature of his pursuers.") What is different about this case is that Charles is not being concealed from his pursuers, as his whereabouts are known to the sovereignty that has indicted him. As noted, the extradition treaty between the United States and Mexico is the obstacle to Charles' apprehension and removal to this country.

Another complication is this—Patricia has the right to live in Mexico, build a ranch there for herself, and take her show horses wherever she pleases[1]. If she separated from Charles and evicted him from the ranch, the government would presumably drop its opposition to her traveling to Mexico and her transfers of assets from the United States for use at her ranch.

If Patricia's acts of finishing construction of the ranch and stocking the ranch with horses constitutes a continuing violation of the accessory/harboring statutes so long as Charles remains thereon, then logically so would her acts of feeding or providing other care for him that is an integral part of a spousal relationship. In effect, we are back to the government's initial position—Patricia should be ordered to cease cohabiting with and acting as a spouse to Charles so long as he remains outside the reach of the government.

According to the government:

"Through this motion, the government is not asking this Court to prevent defendant Patricia Hill from consorting with her fugitive husband. If Charles Hill wants to come to the United States to be with his wife, he may do so. He will be forced to face the current charges, but the government's present request is that the Court not permit defendant Patricia Hill from further engaging in criminal conduct by providing financial assistance and shelter to a fugitive. By traveling to Mexico, and causing assets to be transferred to Mexico to aid the fugitive in constructing a horsebreeding ranch, defendant Patricia Hill is committing a crime." (Government's Motion for Modification of Conditions of Release, page 6).

The government concedes that prosecution of spouses under the harboring/accessory statutes are rare (probably because prosecutors have exercised their discretion cautiously in such cases), but cites a district court case from 62 years ago as instructive:

The husbands of the defendants were indicted in the Northern District of New York. Defendants are charged with harboring their husbands as fugitives from justice and with conspiring to do so.

It would, undoubtably, be difficult to obtain a conviction charging wives with harboring their husbands, and while it might be regarded as inhuman and unnatural on the part of a wife to surrender her husband to the authorities and contrary to the instincts of human beings to do so, nevertheless, as a matter of law, wives can be convicted of illegally harboring their husbands as fugitives from justice. *United States v. Oley*, 21 F.Supp. 281 (E.D.N.Y.1937).

That it "might be regarded as inhuman and unnatural" and "contrary to the instincts of human beings" for a spouse to surrender a spouse to the authorities tells this court that it should tread lightly in this area, and give the most careful shrift to the government's request.

Despite its statement to the contrary, the government is indeed asking this court to prevent defendant Patricia Hill from consorting with her fugitive husband. Although the government observes that Charles is free to come to the United States if he wishes to be with his wife, restricting Patricia's travels so that Charles will be induced to come back to this country is not a proper consideration under the Bail Reform Act, which provides:

The judicial officer shall order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court, subject to the condition that the person not commit a Federal, State, or local crime during the period of release, unless the judicial officer determines that such release will

---

[1]. Although this court could limit these rights in fashioning appropriate conditions of release, I have found it unnecessary to do so based on the finding that she is not a flight risk.

not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community. 18 U.S.C. § 3142(b).

Thus the only cognizable basis for granting the government's request to modify the defendant's conditions to preclude her from residing in Mexico with her husband, financing the construction of the ranch and moving the horses there would be that such activities violate the harboring/accessory statutes.

Without clearer precedent to support its theory, I am not persuaded that the government is correct that the above conduct falls within the reach of these statutes. Especially where the concealment aspect of Charles' "flight" has ended, and his pursuers know exactly where he is, it does not seem to this court that his spouse commits any crime by living with him and providing the type of support and care that is the normal and integral part of a marriage relationship.

While Charles may be acting irresponsibly and even ignobly in all of this, the circumstances of this case do not warrant the court to impose conditions of release that have the effect of severing a spousal relationship.