**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Conrado GARCIA–GUIZAR,**
**Defendant–Appellant.**

**No. 96–10574.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 1998.

Decided Oct. 23, 1998.

512

David M. Porter and Ann C. McClintock, Assistant Federal Public Defenders, Sacramento, CA, for defendant-appellant.

William S. Wong, Assistant United States Attorney, Sacramento, CA, for plaintiff-appellee.

Before: FLETCHER, D.W. NELSON and BEEZER, Circuit Judges.

Opinion by Judge FLETCHER; Partial Concurrence and Partial Dissent by Judge BEEZER.

FLETCHER, Circuit Judge:

Conrado Garcia–Guizar and a co-defendant were indicted for multiple drug offenses resulting from the co-defendant's sales of methamphetamine to an undercover agent. The co-defendant pleaded guilty, but Garcia went to trial and testified on his own behalf. On appeal, Garcia challenges four of his five convictions, his sentence, and his criminal forfeiture verdict. We affirm three of the four challenged convictions, reverse one, and vacate and remand the sentence and forfeiture verdict.

## I.

Garcia's convictions derive from three undercover methamphetamine transactions between co-defendant Israel Cruz and Special Agent Lupe Castillo Baker, which took place on June 8, 1995, June 19, 1995, and July 27, 1995. Each of the methamphetamine sales occurred at the Crazy Taco Wagon eatery in Chico, California. Law enforcement officers conducted surveillance of each transaction, and Baker used pre-recorded government funds to purchase the methamphetamine.

Twenty minutes after first meeting with Baker on June 8, 1995, Cruz was seen walking across the street from the Crazy Taco Wagon to speak with Garcia, who was sitting in the driver's seat of a blue van. Garcia then drove the van to an auto body shop and

back to an apartment complex near the Crazy Taco Wagon. Cruz soon returned to the Crazy Taco Wagon and sold Baker 1/4 pound of methamphetamine for $1800. During the transaction, Cruz again left Baker to speak with Garcia. Ten minutes after Cruz returned to Baker and completed the sale, Garcia left the scene and drove to a shopping mall. Garcia then drove from the mall to a mini-storage facility in Chico. He entered one of the lockers, emerged and drove to Cruz's home. Garcia went inside briefly and then departed.

Prior to Cruz's June 19, 1995, sale to Baker of 1/2 pound of methamphetamine for $3500, Garcia and Cruz were seen talking near a fence surrounding the back of an apartment complex near the Crazy Taco Wagon. Garcia had picked up Cruz in a BMW and driven to the far end of the apartment complex parking lot. Garcia then returned Cruz to his own car at the near side of the parking lot. A few minutes later, Baker was met by a woman at the Crazy Taco Wagon. The two walked to the fence, where Baker spoke briefly with Cruz. Baker then left the Crazy Taco Wagon. Garcia drove over to Cruz in the BMW and opened the trunk and the two looked in the trunk. Baker then returned to the Crazy Taco Wagon parking lot and concluded the drug transaction with Cruz.

Cruz sold Baker 1/4 pound of methamphetamine for $1800 at the Crazy Taco Wagon on July 27, 1995. However, no evidence in the record suggests that Garcia was present at or involved in this transaction.

About a month later, law enforcement officers executed search warrants at Garcia's home and at a storage locker that he rented. From Garcia's home the government seized a gun, a pager, a paper that the government describes as a "pay-owe" sheet, and keys to the storage locker. The subsequent search of the storage locker yielded sixteen packages of marijuana and $43,070 in cash, some of which was pre-recorded government funds from two of the methamphetamine sales, in a brown paper bag. Of the $1800 in pre-recorded government funds used for the June 8 transaction between Baker and Cruz, $1600 was found in the brown paper bag in Garcia's locker. Of the $3500 used for the June 19 transaction, $2700 was found in the paper bag. However, the record does not indicate that any of the pre-recorded funds used in the July 27 transaction were recovered from Garcia's storage locker.

The government indicted Cruz and Garcia, charging them with multiple drug offenses. Garcia entered pleas of not guilty on all counts. Following pre-trial motions from both defendants regarding discovery, Cruz entered into a plea bargain with the government and ultimately received a sentence of 120 months in prison. The grand jury then handed up a superseding six-count indictment charging Garcia with conspiring to distribute methamphetamine (count 1), distributing and aiding and abetting the distribution of methamphetamine on June 8, June 19 and July 27 (counts 2–4), and possessing marijuana with the intent to distribute (count 5), in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 846. The superseding indictment also charged criminal forfeiture of the $43,070 found in Garcia's locker pursuant to 21 U.S.C. § 853(a)(1) (count 6). Garcia again pleaded not guilty to all counts.

At trial, Garcia admitted that he possessed the marijuana found in the storage locker and that he sold marijuana. However, he estimated that at least 80 percent of the $43,070 he kept in the storage locker came from legitimate, non-drug related business. He testified that he earned a living by gardening work, farm work, and by fixing up and reselling cars. Garcia denied having any involvement with methamphetamine trafficking.

Among the government's witnesses was Louise Hill, who worked at the storage facility where Garcia rented a locker. Hill testified that Garcia rented the locker under the false name of "Carlos Guizar." Co-defendant Cruz testified for the defense. Cruz admitted that he had pled guilty in connection with the methamphetamine sales but testified that Garcia had nothing to do with buying or selling methamphetamine. On cross-examination, Cruz testified that his source for the undercover sales was a man named Gilberto Cisneros.

The jury found Garcia guilty of counts one through five. The jury also returned a verdict that the $43,070 described in count six was subject to forfeiture. Prior to sentencing, Garcia objected to the presentence report which recommended a sentencing range of 135 to 168 months, including upward adjustments for "organizer, leader or supervisor" pursuant to U.S.S.G. § 3B1.1(c) (2 points) and for obstruction of justice pursuant to U.S.S.G. § 3C1.1 (2 points). Garcia argued that the evidence did not show that he was Cruz's methamphetamine supplier as suggested by the probation officer, and that he did not obstruct justice since he candidly admitted ownership of the marijuana and money found in the storage locker.

The district court adopted the recommended sentencing enhancements, finding that Garcia gave false testimony on a material matter with willful intent when he "testified that a portion of the $43,000 he kept in a mini storage rental unit was stored there for his relatives, since it was proceeds of property sold for them." The district court also found that the criminal history score did not overrepresent Garcia's own criminal history. Nevertheless, the court sentenced Garcia at the low end of the guideline range, imposing 135 months for counts one though four, 60 months for count five to be served concurrently, and 60 months of supervised release.

On appeal, Garcia challenges his convictions, his sentence and his criminal forfeiture verdict. Specifically, Garcia argues that there was insufficient evidence to support either his convictions or the criminal forfeiture verdict. In addition, Garcia argues that the prosecutor committed misconduct during closing argument by impermissible vouching, by attempting to shift the burden of proof, and by commenting on the co-defendant's guilty plea. Garcia also argues that the district court's jury instructions were erroneous. Finally, Garcia argues that the district court erred in applying the two-level increase in his sentence for obstruction of justice.

## II.

██ Garcia's failure to raise most of his issues before the district court limits our review of those claims to plain error. *See*

*United States v. Amlani,* 111 F.3d 705, 714 (9th Cir.1997). We invoke plain error in our discretion to prevent a miscarriage of justice or to preserve the integrity and the reputation of the judicial process. *See United States v. Olano,* 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The four factors of the plain error test were most recently outlined in *United States v. Plunk,* 153 F.3d 1011 (9th Cir.1998).

According to the Supreme Court's most recent articulation of the plain error standard, before an appellate court may address and correct an error not raised at trial, several conditions must be satisfied: "[T]here must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " If all conditions' are met, an appellate court may then exercise its discretions to notice a forfeited error, but only if (4) the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997) (quoting *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)) (citations and internal quotation marks omitted).

*Id.* at 153 F.3d 1011, 1018, 1998 WL 544515, at * 5; *see also United States v. Burt,* 143 F.3d 1215, 1217–18 (9th Cir.1998). Under this standard, we reverse one conviction and vacate and remand the forfeiture verdict. We also vacate and remand the sentence.

*Sufficiency of the Evidence Supporting Methamphetamine Convictions*

██ Garcia claims that the evidence presented at his trial was insufficient to support his methamphetamine-related convictions (counts 1–4). There is insufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). However, in order to preserve sufficiency of evidence claims on appeal, a defendant must move for judgment of acquittal during trial pursuant to Fed. R.

6. P. 29(a). *United States v. Quintero–Barraza*, 78 F.3d 1344, 1351 (9th Cir.1995). Since Garcia failed to do so, our review is for "plain error, or to prevent manifest injustice." *Id.* (citation omitted). Nevertheless, we have expressed our reluctance, regardless of the standard of review, "to affirm a conviction and send a defendant to prison or his death if the record clearly showed that the evidence was insufficient." *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1010 (9th Cir.1995).

■ Under the plain error standard, Garcia's claim of insufficient evidence in support of the aiding and abetting convictions for the June 8 and June 19 transactions (counts 2 and 3) cannot succeed. Although mere proximity to the scene of illegal drug transactions is not sufficient to establish involvement in the illicit activity, "a defendant's presence may support such an inference when viewed in context with other evidence." *United States v. Penagos*, 823 F.2d 346, 348 (9th Cir.1987). On both June 8 and June 19, Garcia was seen conferring with Cruz during the drug transactions. Moreover, nearly all of the pre-recorded government funds used in those two transactions was later found in Garcia's storage locker.

With regard to Garcia's conspiracy conviction (count 1), the government contends on appeal that Garcia's involvement in the methamphetamine transactions justifies an inference that he was involved in the charged conspiracy. We agree. Although Garcia argues that there is no evidence of any agreement between Cruz and Garcia, and that the pre-recorded funds from the June 8 and June 19 transactions found in his storage locker did not come from Cruz, this court has long held that " '[a] defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions.' " *United States v. Calabrese*, 825 F.2d 1342, 1348 (9th

Cir.1987) (quoting *United States v. Batimana*, 623 F.2d 1366, 1368 (9th Cir.1980)). Garcia's conspiracy conviction is not a manifest injustice.

■ By contrast, there is no evidence in the record supporting any connection between Garcia and the July 27 transaction (count 4): Garcia was not present at the scene during the drug sale, no funds from that transaction were recovered in his possession, and no one testified that he was in any way involved. Although the evidence need not show that Garcia "actually sold drugs to convict him as an aider and abettor," *United States v. Gillock*, 886 F.2d 220, 222 (9th Cir.1989), there must be some evidence to support the conviction, even under the plain error standard. Here, there is none, beyond Garcia's apparent involvement in the June 8 and June 19 transactions. Reviewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. 2781.

Accordingly, we affirm Garcia's conviction of counts 1, 2 and 3, but reverse Garcia's conviction for count 4 due to insufficient evidence.

*Sufficiency of the Evidence Supporting Criminal Forfeiture*

■ Garcia claims that the evidence was insufficient to support the jury's verdict that all of the $43,070 found in his storage locker was subject to criminal forfeiture under 21 U.S.C. § 853(a)(1) (count 6). Because Garcia failed to raise the issue of the sufficiency of the evidence supporting the forfeiture before the district court, we review his claim for plain error. *See Amlani*, 111 F.3d at 714.

■ Under § 853(a)(1),[1] the government need prove by only preponderance of the

---

1. Section 853(a) provides three different means for criminal forfeiture:

   Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—

   (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
   (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

evidence, and not beyond a reasonable doubt, that property should be criminally forfeited. *United States v. Hernandez–Escarsega*, 886 F.2d 1560, 1577 (9th Cir.1989), *cert. denied*, 497 U.S. 1003, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990). This burden of proof is constitutional because the criminal forfeiture provision does not itself describe a separate offense, but is merely an "additional penalty" for an offense that must be proved beyond a reasonable doubt. *Id.* The burden of proving that the property should be forfeited pursuant to § 853(a)(1) may, but need not, be met pursuant to the rebuttable presumption established by § 853(d). *Id.*

■■■■ The government failed to introduce any evidence to prove that the recovered money was "proceeds" of the illegal drug activity for which Garcia was convicted, apart from the $4300 of pre-recorded government funds used by Agent Baker in her June 8 and June 19 methamphetamine transactions with Cruz. In addition, the government presented no evidence showing that the balance of the money not derived from the June 8 and June 19 methamphetamine transactions was acquired by Garcia during the time period of the offenses for which he was convicted, June 8 to August 25, 1995.[2] As a result, the government cannot benefit from the rebuttable presumption provided in § 853(d).

Nevertheless, the government argues that it met its burden of proof by introducing evidence that Garcia rented the storage locker under a false name, and that Garcia had a separate bank account in which he would have kept money from legitimate business endeavors. The government also notes that Garcia admitted on cross-examination that "approximately $10,000" of the money found in the storage locker derived from sales of marijuana. Finally, the government suggests that the "pay-owe" sheets recovered at Garcia's house "reflected drug sales to Dan Leal and co-defendant Israel Cruz." Together, the government contends, these facts raise an inference that at least some of the $43,000 found in Garcia's storage locker was obtained from illegal drug sources and, consequently, all of the money was properly forfeited. We disagree.

The section of the criminal forfeiture statute under which the government indicted Garcia requires the government to prove that the money constituted "proceeds the person obtained, directly or indirectly, as the result of *such violation*," 21 U.S.C. § 853(a)(1) (emphasis added); that is, the drug activities for which Garcia was *convicted*. In contrast to the "relevant conduct" provisions of the Sentencing Guidelines, *see* U.S.S.G. § 1B1.3, this statutory limitation in § 853(a)(1) is critical to the constitutionality of the preponderance of the evidence standard applied to criminal forfeiture under that section. *See Hernandez–Escarsega*, 886 F.2d at 1576–77. Thus, only that part of the $43,070 found in Garcia's storage locker that the government has proven by preponderance of the evidence was proceeds of the conduct for which Garcia was actually convicted is properly subject to criminal forfeiture under § 853(a)(1).

(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

In addition, § 853(d) establishes a rebuttable presumption regarding what property may be subject to forfeiture:

There is a rebuttable presumption at trial that any property of a person convicted of a felony under this subchapter or subchapter II of this chapter is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that—

(1) such property was acquired by such person during the period of the violation of this

subchapter or subchapter II of this chapter or within a reasonable time after such period; and

(2) there was no likely source for such property other than the violation of this subchapter or subchapter II of this chapter.

**2.** Garcia's three aiding and abetting convictions were for the transactions occurring on June 8, 1995, (count 2), June 19, 1995, (count 3), and July 27, 1995, (count 4). Garcia's marijuana conviction was for possession with intent to distribute on August 25, 1995, (count 5). Garcia's methamphetamine conspiracy indictment (count 1) was for activities "beginning at a time unknown to the Grand Jury, but not later than on or about June 8, 1995, and continuing up to an including July 27, 1995."

The government also argues that, since at least some of the $43,070 is properly subject to criminal forfeiture under § 853(a)(1), all of the money should be forfeited because it was all co-mingled in Garcia's storage locker. Perhaps the government misindicted and intended to charge Garcia under § 853(a)(2) in which such co-mingling is relevant. However, the government's argument fails under § 853(a)(1), which lacks the statutory language of "in any manner or part" found in § 853(a)(2). That phrase is essential to our interpretation of § 853(a)(2) as authorizing "the forfeiture of a full parcel of property where only a portion is used for illegal purposes." *United States v. Littlefield,* 821 F.2d 1365, 1367 (9th Cir.1987); *cf. United States v. Rutgard,* 116 F.3d 1270, 1290–93 (9th Cir. 1997) (similarly distinguishing money laundering statutes 18 U.S.C. §§ 1957 and 1956). As a result, criminal forfeiture under § 853(a)(1) must be limited to that portion of Garcia's property that the government proved by a preponderance of the evidence was the proceeds obtained as a result of the activities for which he was convicted.[3] Co-mingling is simply not relevant under § 853(a)(1).

Garcia was convicted of aiding and abetting a total of $6800 worth of methamphetamine sales (approximately one pound, or about 450 grams) on June 8, June 19, and July 27, 1995, of conspiring on those dates to distribute "100 grams or more" of methamphetamine, and of possessing eighteen pounds of marijuana with intent to distribute. The evidence cited by the government regarding a false name, a separate bank account, and a "pay-owe" sheet may be probative of Garcia's guilt, but they cannot broaden the scope of the forfeiture under § 853(a)(1) beyond the offenses for which he was in fact convicted.

The pre-recorded $4300 from the June 8 and June 19 transactions (counts 2 and 3) found in Garcia's locker undoubtedly was properly forfeited. However, there is no evidence in the record suggesting that any of the remaining money was the proceeds of the July 27 transaction (count 4). Nor does Garcia's admission of selling marijuana support additional forfeiture because he was not convicted of selling any marijuana, only of possession with intent to distribute (count 5). Finally, the conspiracy conviction (count 1) was for the same transactions charged in counts 2–4. By limiting the forfeiture to the "proceeds obtained," § 853(a)(1) does not allow for double counting due to the conspiracy conviction.[4] As a result, no evidence supports the forfeiture of any portion of the $43,070 except the $4300 from the June 8 and June 19 transactions.[5]

**3.** The decisions from the Seventh and Eighth Circuits cited in the partial dissent, *see* Partial Dissent at pp. 12347–48, do not engage in any statutory analysis of the distinctions between sections 853(a)(1) and 853(a)(2). *See United States v. Wojcik,* 60 F.3d 431, 434 (8th Cir.1995); *see also United States v. Alaniz,* 148 F.3d 929, 934 (8th Cir.1998) (citing *Wojcik*); *United States v. Patel,* 131 F.3d 1195, 1200–01 (7th Cir.1997) (same).

**4.** The conspiracy count seems to have caused the jury some confusion in calculating the amount subject to forfeiture. During deliberations, the jury queried the judge: "Specifically does Count 6 restrict us to the time frame of June 8—July 27? Or does it include 'beginning at a time unknown and continuing up to and including July 27' as specified in instruction number 2." The judge's response that "the time period that relates to Count 6 is that time period that pertains to the activity charged in Count 1–5," did little to clarify the situation. The jury's confusion on the time frame of the conspiracy count might have led it to apply the rebuttable presumption under § 853(d) and find that the entire amount was subject to forfeiture.

**5.** The partial dissent cites an out-of-circuit case, *United States v. McHan,* 101 F.3d 1027, 1043 (4th Cir.1996), for the proposition that the minimum amount properly forfeited should reflect the full $5300 paid by the undercover agent to Cruz rather than the $4300 in pre-recorded funds actually recovered from Garcia's storage locker. *See* Partial Dissent at pp. 12349–50. *McHan,* however, is distinguishable from the present case.

McHan obtained nearly $1.5 million in proceeds from a series of drug transactions. 101 F.3d at 1033. Before dividing the proceeds with his partner, the two men were arrested, and his partner subsequently died. *Id.* at 1031. The government sought forfeiture of the full $1.5 million that the partners had received. *Id.* at 1041. McHan argued and the district court determined that the government could seize only his 50 percent share of the proceeds. *Id.* In finding for the government, the Fourth Circuit stated: "As a member of the McHan–Cunning-

We espouse no view as to whether the result would have been different had the government indicted Garcia under § 853(a)(2) rather than § 851(a)(1). However, as the government charged it, insufficient evidence supported the jury's verdict forfeiting $43,070. *See Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. 2781. We remand with instruction that the district court reduce the forfeiture amount to $4300.

*Vouching*

Garcia claims that his convictions should be overturned because the prosecutor engaged in impermissible vouching. As we have frequently observed, "the government may not vouch for the credibility of its witnesses, either by putting its own prestige behind the witness, or by indicating that extrinsic information not presented in court supports the witness' testimony." *United States v. Rudberg,* 122 F.3d 1199, 1200 (9th Cir.1997) (citing *United States v. Roberts,* 618 F.2d 530, 533 (9th Cir.1980)). Neither may a prosecutor "express his opinion of the defendant's guilt." *United States v. Molina,* 934 F.2d 1440, 1444 (9th Cir.1991). Vouching is especially problematic in cases where the case against the defendant is close. *See United States v. Kerr,* 981 F.2d 1050, 1054 (9th Cir.1992). In evaluating contentions that the prosecutor impermissibly vouched for witness credibility, we first decide whether vouching occurred and then determine whether the error warrants reversal. *See Rudberg,* 122 F.3d at 1204.

Garcia claims three instances of impermissible vouching by the prosecutor during closing argument. We agree with respect to Garcia's first claim that the

prosecutor asserted a personal opinion regarding Garcia's credibility by calling him "a liar." [6]

As noted by the government, we found no plain error in the prosecutor's statement in *United States v. Laurins:* "I think that after listening to all the evidence defendant has lied to you consistently throughout. His entire testimony is one big lie and falsity." 857 F.2d 529, 539 (9th Cir.1988); *see also United States v. Sarno,* 73 F.3d 1470, 1496–97 (9th Cir.1995) (no vouching in contrasting two inconsistent accounts of the same transaction and asking the jury to draw the inference that one is more accurate).

However, unlike those cases, the prosecutor in Garcia's trial appears not to have merely called for reasonable inferences " '[i]n a case that essentially reduces to which of two conflicting stories was true,' " *Sarno,* 73 F.3d at 1496–97 (quoting *Molina,* 934 F.2d at 1445), but appears instead to have been asking the jury to conclude, based on the testimony of Louise Hill regarding the ownership of the storage locker-which the prosecutor stated that he found "compelling"-that Garcia's entire testimony must be discredited. Thus, rather than commenting on the evidence and asking the jury to draw reasonable inferences, as was allowed in *Laurins, Sarno* and *Molina,* the prosecutor in Garcia's trial impermissibly interjected his own personal opinions, not only with regard to Garcia's credibility, but also with regard to Hill's testimony. *See, e.g., Kerr,* 981 F.2d at 1053 ("A prosecutor has no business telling the jury his individual impressions of the evidence. Because he is the sovereign's representative,

---

ham joint venture, McHan received all proceeds of the partnership. Simply because the partners thereafter agreed to divide the take does not negate the existence of the proceeds and the taint caused by the illegal activity." *Id.* at 1043. Thus, there was no doubt that McHan possessed the $1.5 million and that the full amount was "tainted." The only question was whether the government could seize the full amount or only McHan's share.

In contrast, we do not know whether and how Garcia and Cruz divided the proceeds of the methamphetamine transactions. There is no evidence that the extra $1000 delivered by the agent was in the locker at the time of seizure or that any money beyond the $4300 was money "taint-

ed" by the criminal activity of which Garcia was convicted.

**6.** The prosecutor stated:

This man (indicating) is a liar. He has come to you and tells you that [prosecution witness] Louise Hill is lying, that she's wrong about this, that Carlos Guizar is the person who rented that. He makes all the payments. He's the only one who's ever seen to go there. And he admits to you that the marijuana is his. The evidence of Louise Hill is so compelling that on that basis alone you can conclude beyond a reasonable doubt that this man is lying.

the jury may be misled into thinking his conclusions have been validated by the government's investigatory apparatus."); *see also Roberts*, 618 F.2d at 533 (emphasizing that the prosecutor may not "place the prestige of the government behind the witness").

We find no merit, however, in Garcia's second vouching claim based on the prosecutor's statement: "You've got Conrado [Garcia] Guizar, an admitted dope dealer, trying to pass off responsibility of transacting methamphetamine to Gilberto Cisneros, who is not here to defend himself, if this person even exists, even if he exists." Here, unlike the "liar" remark, the prosecutor's statement does indeed seem to be "a comment on the evidence rather than an assertion of personal belief." *Laurins*, 857 F.2d at 539. Nor does the statement imply that there is evidence outside the record that further supports the prosecutor's case. *Cf. Roberts*, 618 F.2d at 533–34. The prosecutor properly limited his comment to the absence of evidence supporting Garcia's explanation. *See United States v. Williams*, 990 F.2d 507, 510 (9th Cir.1993).

Neither is there merit in Garcia's third vouching claim regarding the prosecutor's statement that Garcia "comes in with this hokey story that this [forfeited] money belongs to other people. Not one person up to date has filed a claim for that money, not one." Garcia argues that the prosecutor's subsequent statement that "any interest that other persons may claim in such [forfeited] property can be taken into account by the Court," was incorrect as to the law, since 21 U.S.C. § 853(k) specifically bars any party from intervening in a trial to claim an interest in forfeited property, and that the two statements constitute an improper comment on his credibility by suggesting that any possible claimants would have been present in the courtroom.

The prosecutor may not "indicat[e] that extrinsic information not presented in court" supports a witness's testimony. *Rudberg*, 122 F.3d at 1200 (citing *Roberts*,

618 F.2d at 533). Nor may the prosecutor suggest that the court is monitoring a witness's veracity. *See id.* at 1204. In this instance, however, the prosecutor was not implying that there was extrinsic evidence or that the court itself was monitoring the veracity of any witness. Instead, the prosecutor argued that the lack of evidence supporting Garcia's story should be interpreted as demonstrating his lack of credibility. While the prosecutor's mischaracterization of the procedures for third party intervention is troubling, it did not constitute improper vouching. As with the Cisneros remark, the prosecutor's statement was "a comment on the evidence, rather than an assertion of personal belief." *Laurins*, 857 F.2d at 539.

In sum, we determine that one statement by the prosecutor-calling Garcia a "liar" based upon Louise Hill's "compelling" testimony-constituted improper vouching. Since Garcia failed to raise this issue before the district court, we review for plain error and reverse only "in those circumstances in which a miscarriage of justice would otherwise result." *Molina*, 934 F.2d at 1444 (citations and internal quotation marks omitted). When reviewing vouching for plain error, we "balance the seriousness of the vouching against the strength of the curative instruction and the closeness of the case." *United States v. Necoechea*, 986 F.2d 1273, 1278 (9th Cir.1993).

Although we note that no curative instruction was offered sua sponte by the judge, and separately hold that the evidence supporting one of Garcia's aiding and abetting convictions is insufficient, the isolated remark by the prosecutor was not serious enough to undermine Garcia's other convictions under the plain error standard.

*Burden of Proof*

Garcia claims that the prosecutor attempted to shift the burden of proof by suggesting that Garcia was obliged to prove his innocence by bringing witnesses,[7] and that he had to "meet the evidence of the money"

---

7. The prosecutor stated: "And what's even more important [Louise Hill] says [she] never saw anyone other than defendant ever go in and use [storage locker] D–34, no one other than the defendant. And the defendant brings no one in to tell you in person...."

found in the storage unit. Garcia objected to the first comment, but no curative instruction was given by the court. Garcia argues that this statement violated the requirement under *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), that the government prove each element beyond a reasonable doubt. We disagree.

■ A "prosecutor is entitled to comment on a defendant's failure to present witnesses so long as it is not phrased to call attention to the defendant's own failure to testify." *Necoechea,* 986 F.2d at 1282 (citing *United States v. Hill,* 953 F.2d 452, 460 (9th Cir. 1991)). Since Garcia did in fact testify at trial, the prosecutor's comment cannot be said to have shifted the burden of proof. *See Williams,* 990 F.2d at 510 ("In the present case, Williams' Fifth Amendment right not to testify was not implicated because he did in fact testify at trial. Therefore, we hold that the prosecutor's comment did not shift the burden of proof."). Moreover, the prosecutor immediately gave a "limiting" statement,[8] and the general jury instructions given by the court also directly addressed the prosecutor's burden of proof. We hold that the prosecutor did not shift the burden of proof to Garcia in violation of *In re Winship.*

### Comment on Co–Defendant's Guilty Plea

■ Garcia claims that it was misconduct for the prosecutor to comment on the guilty plea of co-defendant Cruz. We disagree.

During his closing argument, the prosecutor told the jury: "Israel Cruz was convicted. He clearly was identified on all occasions. There is no doubt of his involvement in this case." Garcia did not raise this issue before the district court. Nevertheless, in arguing on appeal that this statement constituted

prosecutorial misconduct, Garcia cites *United States v. Hansen,* 544 F.2d 778, 780 (5th Cir.1977), for the proposition that "the prejudice to the remaining parties who are charged with complicity in the acts of the self-confessed guilty participant is obvious."

However, Garcia opened the door to comments on Cruz's guilty plea when his counsel stated in his opening remarks: "We're also going to bring you ... Israel Cruz, who is now in federal lockup after having pled guilty to the crimes the Government says he did." Then, on direct examination of Cruz, defense counsel asked if he had pled guilty in this case and Cruz answered "Yes." In addition, the district court's jury instructions clarified that statements by the attorneys in closing argument are not evidence.

We have emphasized that "[w]here the defendant opens the door to an argument, it is fair advocacy for the prosecution to enter." *Williams,* 990 F.2d at 510 (citation and internal quotation marks omitted). Moreover, we have held that mentioning the guilty pleas of co-defendants in closing argument need not constitute prosecutorial misconduct. *See United States v. Aguon,* 851 F.2d 1158, 1171 (9th Cir.1988) (en banc), *overruled on other grounds by Evans v. United States,* 504 U.S. 255, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992). Because Garcia opened the door regarding Cruz's guilty plea and the prosecutor did not imply that Cruz's plea was evidence of Garcia's guilt, the prosecutor's comment did not constitute misconduct under the plain error standard.

### Jury Instructions

Garcia claims that Jury Instruction No. 11, given to the jury before its single deliberation for both the guilt and forfeiture counts, was unconstitutional.[9] As with most of Gar-

---

**8.** Shortly after making the statement with which Garcia takes issue, the prosecutor explained:

Now—make it clear ladies and gentlemen, the Government is not attempting to shift any burden whatsoever. I welcome that burden of proof. What I'm saying to you: the defense is in possession of certain knowledge of this case. The defense proffers the position that someone else at one time had possession or had control of this particular rental locker. Why isn't that person brought here? He says—Mr. [Garcia] says the other people have come to that loca-

tion also. Where are they? To refute Louise Hill?

**9.** Jury Instruction No. 11 stated in pertinent part:

The United States Government must prove its case for forfeiture beyond a reasonable doubt. However, if you believe, by a preponderance of the evidence, that the Defendant acquired any of the properties during the period from June 8, 1995, through July 27, 1995, and that there was no likely source for such property other than from the commission of

cia's other claims, the failure to object to Jury Instruction No. 11 or to request any additional instructions limits our review to plain error. *See United States v. Bracy*, 67 F.3d 1421, 1431 (9th Cir.1995). Specifically, Garcia argues that the instruction was misleading as to the appropriate burden of proof, that the phrasing improperly suggested that all of the money was subject to forfeiture if any part was the product of illegal drug transactions, and that the court should have instructed the jury that the preponderance of the evidence standard did not apply to the substantive criminal charges and that Garcia should be presumed innocent. We disagree.

First, although Garcia argues that the criminal forfeiture instruction conflated the beyond a reasonable doubt standard with a preponderance of the evidence standard, criminal forfeiture need only be proved by a preponderance of the evidence. *See Hernandez–Escarsega*, 886 F.2d at 1576–77. As a result, Garcia can only have benefitted by any ambiguity in the instruction suggesting that the government must prove criminal forfeiture beyond a reasonable doubt.

Next, Garcia argues that the use of the term "any properties," rather than "any property," in the instruction was misleading in that it permitted the jury to find all $43,070 forfeitable even if only a small portion of the sum was actually the product of illegal drug transactions that occurred between June 8, 1995, and July 27, 1995. Although we separately hold that the evidence supporting the forfeiture of the entire $43,070 was insufficient, we are not convinced that the difference between "any properties" and "any property" was the source of the jury's confusion.

Garcia also argues that the court should have instructed the jury sua sponte that the preponderance of the evidence burden of proof did not apply to the other counts. Along these lines, Garcia suggests that our upholding of the preponderance of

the evidence standard in *Hernandez–Escarsega* depended on the fact that in that trial, unlike his, "[f]urther instructions ... cautioned the jury not to confuse the burdens of proof." 886 F.2d at 1576. Specifically, at trial in *Hernandez–Escarsega*,

> [t]he court emphasized that when analyzing and discussing the guilt or innocence of the defendant charged in the four counts of the indictment, the Government must prove the defendant guilty beyond a reasonable doubt and that the only time the preponderance of the evidence standard was to come into play was with regard to this forfeiture provision.

*Id.* Garcia contends that since none of these cautions were implemented in his case, his convictions must be overturned. However, since Garcia failed to raise this issue before the district court, we may only reverse if the absence of the limiting instruction amounted to a "miscarriage of justice," *United States v. Ponce*, 51 F.3d 820, 830 (9th Cir.1995), which does not appear to have occurred here due to Garcia's involvement at the scene of the June 8 and June 19 transactions, and the presence in his storage locker of nearly all of the prerecorded funds used by the government in those transactions.

Garcia further argues that the court's failure to instruct the jury sua sponte on the presumption of innocence constitutes plain error. However, the court twice admonished the jury regarding the presumption of innocence at the beginning of the trial. First, the court told the jury that "[a] person charged with a crime is presumed innocent." Then, the court stated that one of the three basic rules the jury must keep in mind during the trial is that "the defendant is presumed innocent until proven guilty."

In *United States v. Payne*, we held that failure to give a presumption of innocence instruction after the jury had been sworn was not plain error, where the district court "repeatedly referred to the presumption of innocence during voir dire." 944 F.2d 1458,

---

one or more of the offenses alleged in Counts One through Five, then you may presume that such property is subject to forfeiture, unless such presumption is outweighed by evidence offered by the Defendant to the contrary. To

establish a fact by a preponderance of the evidence means to prove that a fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence.

1467 (9th Cir.1991). Thus, while it is preferable for the court to give a presumption of innocence instruction when charging the jury, failure to do so is not plain error where, as here, the record "supports a sense that the jury was aware of the presumption of innocence." *Id.*

■■■ Finally, Garcia claims that the prosecutor's comments on co-defendant Cruz's guilty plea warranted a limiting instruction by the court explaining that evidence of Garcia's guilt should not be inferred from Cruz's guilty plea, and that it was plain error for the court to fail to give such an instruction sua sponte. We disagree.

We held in *United States v. Halbert* that, although the references by the prosecutor during trial to the guilty pleas of co-defendants were not impermissible, the failure of the court to instruct the jury that the guilty pleas of co-defendants could not be considered as evidence of a defendant's guilt was reversible error. 640 F.2d 1000, 1006–07 (9th Cir.1981). However, in that case the evidence of the co-defendant's guilty pleas was offered over defense counsel's objections, and the curative instruction was necessary to dispel the danger of misuse by the jury. *Id.* at 1006.

In the present case, Garcia introduced the evidence of Cruz's guilty plea himself in order to bolster his case by having Cruz take responsibility for the drug transactions and testify that Garcia played no part in them. Thus, there was no harm to be cured by an instruction. Moreover, the prosecutor in his single remark did not emphasize Cruz's guilty plea or suggest that it was evidence of Garcia's guilt. *See United States v. Tamura,* 694 F.2d 591, 602 (9th Cir.1982). We find no manifest injustice.

In sum, we hold that Jury Instruction No. 11 did not result in a miscarriage of justice, and that the lack of additional cautionary instructions regarding the prosecution's burden of proof, the presumption of innocence, or the prosecutor's comment on the co-defendant's guilty plea also did not constitute plain error.

*Sentencing Enhancement for Obstruction of Justice*

Garcia claims that the district court erred in applying to his sentence a two-point enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1, which provides: "If the defendant willfully obstructed and impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels."

■■■ To apply such an enhancement, the Supreme Court has interpreted § 3C1.1 as requiring the district court to "review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice, or an attempt to do the same." *United States v. Dunnigan,* 507 U.S. 87, 95, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). The required findings are identical to those supporting a perjury conviction: "(1) false testimony, (2) on a material matter, (3) with willful intent." *United States v. Ancheta,* 38 F.3d 1114, 1118 (9th Cir.1994) (citing *Dunnigan* ). While it is "preferable for a district court to address each element of the alleged perjury in a separate and clear finding," the district court's determination that enhancement is required is sufficient if "the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Dunnigan,* 507 U.S. at 95, 113 S.Ct. 1111.

■■■ We review factual findings by the district court to support sentencing enhancements for clear error, *see United States v. Sherwood,* 98 F.3d 402, 415 (9th Cir.1996), and review the district court's application of the guidelines to the facts of a particular case for abuse of discretion, *see United States v. Parrilla,* 114 F.3d 124, 126 (9th Cir.1997).

■■■ The district court made the following factual finding at sentencing in support of the enhancement under § 3C1.1:

[Garcia] testified that a portion of the $43,000 kept in a mini storage rental unit was stored there for his relatives, since it was proceeds of property he sold for them. This was false testimony, since over $4000

of that money was traced to the funds the police gave his co-defendant Cruz to purchase methamphetamine. He lied while testifying that he stored this money, rolled up inside rubber bands, placed in a paper bag, just for his relatives. The source of the money was the sale of illegal drugs. Although this finding tracks verbatim the recommendation in the presentence report, Garcia claims it does not encompass all of the factual predicates for the enhancement. Specifically, Garcia argues that his testimony was completely consistent with the determination that $4300 of the $43,070 found in the locker was pre-recorded government funds from two of the methamphetamine transactions. We agree.

Accepting the district court's characterization of Garcia's testimony as accurate, we must conclude that the factual finding does not support the district court's conclusion regarding Garcia's alleged falsehood. The finding states that Garcia testified that "a portion" of the $43,070 in the storage locker was kept there for relatives. The very next sentence concludes that Garcia's testimony must have been false "since over $4000 was traced to the funds the police gave his co-defendant Cruz to purchase methamphetamine." However, the fact that 10 percent of the money in the storage locker was drug money does not mean that another "portion" of the money was not in fact being held by Garcia for his relatives. Nor is there any other evidence in the record to support the obstruction of justice enhancement.

■ Although "a district court is not required to enumerate specifically which portions of a defendant's testimony are false to justify an enhancement for obstruction of justice," *United States v. Acuna*, 9 F.3d 1442, 1445 (9th Cir.1993), the district court's conclusion here is internally inconsistent and unsupported by its factual finding or any evidence in the record. As a result, we hold

that the district court abused its discretion in applying the sentencing enhancement under § 3C1.1 for obstruction of justice.

### III.

We REVERSE Garcia's conviction for aiding and abetting the sale of methamphetamine on July 27, 1995 (count 4). We VACATE the criminal forfeiture verdict (count 6) and REMAND with instructions that the forfeiture amount be reduced to $4300. We VACATE Garcia's sentence and REMAND for resentencing consistent with this opinion.

BEEZER, Circuit Judge, concurring in part and dissenting in part:

I concur in the opinion of the court affirming convictions on counts 1 through 3 and reversing on count 4.

I respectfully dissent from the court's opinion which sets aside the jury's verdict on count 6. I would hold that $43,070 is subject to criminal forfeiture pursuant to 21 U.S.C. § 853(a)(1).[1] Because Garcia failed to raise the sufficiency of the evidence supporting the forfeiture count before the district court, we review for plain error. " 'Plain' is synonymous with 'clear' or, equivalently, 'obvious.' " *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). There was no plain error here.

The jury's determination that the seized $43,070 in cash was subject to forfeiture cannot be said to be plainly erroneous in light of the circumstances under which that cash was found. The location of the cash indicated that it was drug proceeds: the cash was recovered from a brown paper bag in a storage locker. Garcia rented that locker under a false name, presumably to deceive law enforcement agents and to prevent them from tracing the locker and its contents to him. The bundling of the cash also indicates the cash was drug proceeds. There were ap-

---

1. Section 853(a) provides in part that:

   Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—

   (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

   (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; ...

   21 U.S.C. § 853(a).

proximately ten bundles of bills, which were folded in half and wrapped with rubber bands. This manner of folding and wrapping of cash is consistent with the sale of drugs. Indeed, among the $43,070 was $4,300 in prerecorded cash from the June 8 and June 19 methamphetamine transactions. In addition, the fact Garcia had a bank account that he used for his personal financial dealings indicates that the cash kept in the locker was drug proceeds. Moreover, marijuana packaged for sale was recovered from Garcia's storage locker, and Garcia admitted he sold marijuana.

The search of Garcia's residence led to the recovery of several items indicating that the cash was the proceeds of the conspiracy. Officers executing the search warrant found a pager (which Garcia admitted was used to contact him in connection with his sales of marijuana), a firearm, keys to the storage locker and a "pay-owe" sheet. The pay-owe sheet was described by a special agent as "[a] white piece of paper with handwritten notations, with the name 'Dan' on one side and 'Isra,' I-s-r-a, on the other side." Under both names, there were "various numerals or amounts written," and other numbers were added to or subtracted from them. The special agent testified that he was familiar with the name of an individual whose name was similar to "Isra," *i.e.,* codefendant Israel Cruz. The special agent also said he was familiar with a person investigated in connection with this case whose first name was "Dan" or "Daniel," *i.e.,* Daniel Leal. The special agent said this paper was consistent with pay-owe sheets. Garcia himself admitted that the pay-owe sheet reflected drug sales to Dan Leal and Israel Cruz.

Although Garcia claimed that the cash was the product of legitimate activities and belonged to family members whose trailer he had sold, the fact Garcia had no documentation corroborating the sources of the cash or the sale of a trailer reflects the implausibility of his explanation. In addition, Garcia's testimony about the sources of the cash is confusing and contradictory. For example, at one point, Garcia estimated that at least 80 percent of the money came from things other than the sale of marijuana; on cross examination, however, he testified he had "no idea" how much of the money was actually his. He also said that he did not file his income tax return in 1994 and did not know how much money he made from legitimate sources that year. The jury was not obligated to believe Garcia's garbled testimony concerning the cash accumulation.

Cash seized by the police was held subject to criminal forfeiture under remarkably similar circumstances in *United States v. Wojcik,* 60 F.3d 431 (8th Cir.1995). Although Wojcik pleaded guilty to distribution of cocaine, he contended the evidence was insufficient to support the forfeiture of $30,577 in cash found at his auto sales business pursuant to § 853(a). Of this cash, $26,705 was found inside a coffee can in the trunk of a car (the keys to which were found in defendant's pocket). Of the $26,705, $1,050 was recorded cash from an undercover drug purchase. The $30,577 also included $2,907 found inside a cardboard box in defendant's office; of this $2,907, $1,200 was marked money from another undercover transaction. *Id.* at 432.

The Eighth Circuit held that the government met its burden of proving that the funds were, or were derived from, proceeds obtained directly or indirectly as a result of Wojcik's drug violations.[2] The government's

---

2. Although the Eighth Circuit did not engage in any statutory analysis of the distinctions between § 853(a)(1) and § 853(a)(2), it is clear that the commingled funds were forfeited pursuant to § 853(a)(1), not § 853(a)(2). The *Wojcik* court stated:

[D]efendant argues that the evidence was insufficient as a matter of law to support the district court's forfeiture of the $30,577 cash found at defendant's place of business, pursuant to 21 U.S.C. § 853(a). Following the evidentiary hearing, the district court found that the government had met its burden of proving

that *the funds were, or were derived from, proceeds obtained directly or indirectly as a result of defendant's drug trafficking violations.* ...
Upon review, we consider whether, viewing the evidence in the light most favorable to the government, the government proved by a preponderance of the evidence that the seized cash *constituted or was derived from defendant's drug trafficking violations.*
*Wojcik,* 60 F.3d at 434 (emphasis added). The emphasized language is virtually identical to that of § 853(a)(1), and there is no discussion in

evidence indicated Wojcik had been involved in previous drug transactions; the money at issue had been stored in cash in unusual locations despite the fact Wojcik had a bank account for his business; and marked cash and recorded cash were found amidst the $30,577. The court rejected Wojcik's claims that the cash was from his legitimate auto sales business, which was a cash business, and that the recorded and marked money might have been placed with his other money by someone else. Wojcik's testimony that most of the $26,705 had been discovered in a repossessed car was not credited. *Id.* at 434.

Similarly, in *United States v. Alaniz,* 148 F.3d 929 (8th Cir.1998), the court, rejecting defendant's argument that insufficient evidence linked $2000 in seized cash to the criminal activities of the conspiracy, affirmed the forfeiture pursuant to § 853(a). That cash was found in a jacket in a closet at a drug "safehouse" affiliated with the conspiracy and was "folded in a manner consistent with drug trafficking." *Id.* at 934. The closet also contained a letter addressed to defendant, who had been living at the safehouse and using it as a base to distribute drugs. *Id.* The court held that, based on this evidence, the jury could reasonably find that the money derived from the conspiracy.[3] *Id.* See also *United States v. Patel,* 131 F.3d 1195, 1200–01 (7th Cir.1997) (affirming forfeiture pursuant to § 853(a)(1) of $120,505 in cash found in a paper bag under defendant's bed; defendant indicated in tape-recorded statements that it was easy for him to make money selling cocaine, that he sometimes made up to $100,000 per week and that other money recovered by law enforcement authorities was his drug proceeds; district court rejected evidence that the money was derived from legitimate family businesses).

There is another problem with the court's opinion filed today. On June 8, 1995, the

undercover agent paid Cruz $1,800, and of this amount, $1,600 was found in Garcia's storage locker. On June 19, 1995, the undercover agent paid Cruz $3,500, and of this amount, $2,700 was found in the locker. Thus, the undercover agent paid $5,300 in these two transactions, of which $4,300 in prerecorded cash was recovered from defendant's storage locker. The majority holds that defendant's proceeds for these two transactions totaled $4,300.

I would hold Garcia liable, at a minimum, for the entire $5,300 paid by the undercover agent. Cash is fungible; the government should not be required to prove that the actual bills found in Garcia's locker are the same pieces of paper that the undercover agent handed to Cruz.

By absolving Garcia of liability for proceeds obtained by his coconspirator Cruz, the court, in effect, adopts a rule that there is no joint and several liability for drug proceeds received by coconspirators. To date, the Ninth Circuit has not addressed this issue, but the courts that have ruled on this question have decided that joint and several liability may be imposed. *E.g., United States v. White,* 116 F.3d 948, 951 (1st Cir.1997) ("In the context of 'property obtained' forfeitures ... several courts of appeals have refused to limit criminal forfeiture to proceeds defendants personally obtained and have held defendants jointly and severally liable for the proceeds obtained by their coconspirators."); *United States v. McHan,* 101 F.3d 1027, 1043 (4th Cir.1996) (stating that a § 853(a)(1) forfeiture "is not limited to property that the defendant acquired individually but includes all property that the defendant derived indirectly from those who acted in concert with him in furthering the criminal enterprise"), *cert. denied,* —— U.S. ——, 117 S.Ct. 2468, 138 L.Ed.2d 223 (1997); *United States v. Benevento,* 836 F.2d 129, 130 (2d Cir.1988).

---

*Wojcik* relating to commission or facilitation, *see* § 853(a)(2).

**3.** Although the *Alaniz* court did not specify whether the cash was forfeited pursuant to § 853(a)(1) or § 853(a)(2), the court cited to *Wojcik,* which is a § 853(a)(1) case. Also, the *Alaniz* court held that there was sufficient evidence for the jury to reasonably find that "the money resulted from the criminal conspiracy." 148 F.3d

at 934. This language is logically consistent with § 853(a)(1) (concerning property constituting or derived from any proceeds obtained, directly or indirectly, as the result of a drug violation) but not with § 853(a)(2) (concerning any property used, or intended to be used, in any manner or part, to commit or facilitate the commission of a drug violation).

Similarly, we have recognized that the cases construing the RICO forfeiture statute, 18 U.S.C. § 1963, are persuasive in construing § 853. *E.g., United States v. Bennett,* 147 F.3d 912, 914 n. 3 (9th Cir.1998). Other courts have construed § 1963 as providing for joint and several liability of RICO defendants. *United States v. Hurley,* 63 F.3d 1, 22 (1st Cir.1995); *United States v. Masters,* 924 F.2d 1362, 1370 (7th Cir.1991); *Fleischhauer v. Feltner,* 879 F.2d 1290, 1301 (6th Cir.1989); *United States v. Caporale,* 806 F.2d 1487, 1506–08 (11th Cir.1986). In short, Garcia should be held liable for-at a minimum-the $5,300 handed to Cruz.

There was no plain error.

I would affirm the judgment entered upon the jury's verdict forfeiting $43,070.